BATES *vs.* THOMPSON and BARBER, Administrators of BARBER.

A Justice of the Peace has no authority to render a judgment by confession if he be interested in the demand on which the judgment is rendered—the case coming within the equity of that clause of the 23d section of the act defining the powers of Justices of the Peace, which prohibits a Justice of the Peace from taking cognizance of any cause, where he shall be directly or indirectly interested in the cause or matter to be determined. Such proceeding is therefore *coram non judice,* and the judgment void.

*Bennington,*
*July,*
*1824.*

THIS was an appeal from the report of Commissioners, taken before the Judge of Probate.

The plaintiff filed in this Court a declaration on several promissory notes, executed by the intestate, and made payable to one Alson Squire or bearer, and by said Squire indorsed to the plaintiff.

The defendants pleaded in bar several judgments, which were rendered on confession of the intestate, before the present plaintiff, as a Justice of the Peace, on the 11th day of November, 1819, in favor of Alson Squire, the original payee, upon the several notes described in the plaintiff's declaration.

To this plea, the plaintiff replied, That thereafterwards, on the 26th day of January, 1820, the defendants' intestate prayed out

a writ of *audita querela*, returnable to the then next County Court for the County of Bennington, wherein he alleged that the said notes were the sole property of the said Bates at the time he took the said confession and entered the pretended judgments thereon. That the said Bates had no jurisdiction of the matter. That the said intestate had been deceived and defrauded in that respect, and had had no day in Court to object to the same. And being threatened with executions issued on said pretended judgments he prayed relief in the premises: Whereupon, the same being seen and understood by the said County Court, they considered that the said judgments be held for nought, and adjudged that said intestate have and recover, &c.

*Bennington,*
*July,*
*1824.*

Bates
*vs.*
Thompson.

To this replication there was a demurrer, and joinder in demurrer.

*D. Robinson* for the plaintiff.

*Church* for the defendants.

AIKENS J. delivered the opinion of the Court.

By the demurrer all the facts well pleaded in the replication are admitted. From these we learn, that the present plaintiff did as a Justice of the Peace, take the said confessions here pleaded in bar, upon demands which were his own property; for, without this fact having been found, the County Court could not have rendered a judgment in favor of the intestate.

It is true, as has been contended by the defendants in argument, that an *audita querela* is not the proper mode to reverse a judgment. It is also true, that where an execution which has issued *upon a judgment*, is set aside, the judgment may remain. As where an administrator having obtained judgment, after a repeal of his letters of administration, prays out execution; there, the execution at *his* suit, will be set aside on *audita querela*, though the judgment remain. (2 Sand. 148.) But it does not follow, that, where an execution, apparently regular upon the face of it, has issued upon proceedings *coram non judice*, the matters *in pais* which make the proceedings so, cannot be inquired into, upon *audita querela*, with a view to relieve against such executions. Reason and authority show, that, in such case, it is the proper and only remedy.

Bennington,
July,
1824.

Bates
vs.
Thompson.

(Cro. Eliz. 233, 319, 810. 1 Bac. Abr. 196—7, tit. *Aud Quæ.* No judgment is thereby reversed; but such facts established as show that none ever existed.

It must be confessed, that the record of the judgment of the County Court is not so technical as could be desired, and possibly it is not entered in such terms as would afford the complainant the specific remedy which his case obviously required, which was, to be relieved from those irregular executions. But, it is not the less evidence of the truth of the material fact alleged in that complaint, to wit, that the Justice who took those confessions was the man in interest. Suppose then, that the fair import of the record is, that the County Court intended to *reverse* those judgments, instead of treating them as never having existed. The question still remains, Did they ever exist? For if they did not, a formal reversal could not bring them into existence, or give them any legal effect, which they did not possess before.

They did not exist, that is, there were in the contemplation of law no such judgments, if the Justice had no authority to take them.

In the 23d section of the act defining the powers of Justices of the Peace, (1 St. 178.) it is declared that no Justice of the Peace shall take cognizance of any cause, where he shall be within either the first, second, third or fourth degree of affinity or consanguinity, to either of the parties, or shall be directly or indirectly interested in the cause or matter to be determined.

The reason of this provision is, the possibility that a Justice of the Peace, thus situated, may labor under an influence, which will cause him in the exercise of the duties of his office, to work an injustice to the opposite party.

It is true that the 21st section of the same act, which gives to Justices the power to take confession of debts, &c. does not expressly treat the proceeding as a *cause,* and seems to leave it doubtful whether the duty of the Justice, in such case, is any thing more than a ministerial act; from the exercise of which, it may be said, he is not expressly excluded by the 23d section. But the very next section, (the 22d) speaks of a judgment rendered by a Justice of the Peace, *on confession,* &c. Now it is difficult to conceive, how, in legal proceedings, a Justice can *render a judgment,*

without taking cognizance of a cause, or matter to be determined, by such judgment.  Suppose it to be doubtful from the language of the debtor, whether he voluntarily confess the debt or not: The Justice must necesarily judge of the weight of the language used.  The declarations of the debtor are, from prudential motives, substituted by the statute, in lieu of the process and the testimony; but they will vary, and the idea of judicial cognizance cannot be excluded.

A record of confession is the same, in effect, as the record of a judgment after the most serious trial.  It changes the *nature* of the demand from a simple contract, liable to be avoided in a variety of ways, to a *debt of record,* of which the record itself is plenary proof.

If then, the law regards the purity of justice with such strictness, that it will not permit a magistrate to take jurisdiction of a cause, where he is related to either of the parties in the fourth degree of affinity, for fear of an improper bias, though the judgment is to be rendered publicly in the face of the world, and upon the oath of a disinterested Jury too, if either party request it, with the right of appeal superadded, how much more ought it to deny to a magistrate the power of settling his own disputes, by judging of the legal import of the language of *his* debtor, and of solving by the magic of his own record, made in secret, any doubt he might entertain of the justice of his own demands!

The case of a confession is, therefore, clearly within the equity of the 23d section of the act regulating the powers of Justices of the Peace within this State.

It follows then, that Willard Bates had no authority to take and record the judgments upon confession, which are pleaded in bar.  They must be regarded as in the nature of proceedings *coram non judice,* by which no one is estopped.  There must therefore be

Judgment for the plaintiff.