#### IN THE

## SUPERIOR COURT OF JUDICATURE.

##### FOR

## THE COUNTY OF SULLIVAN, OCTOBER TERM,

### A. D. 1829.

---

### MOSES BEAN *versus* WILLIAM QUIMBY.

The privilege of clients to have their communications to counsel kept secret, extends in this state not only to communications made to professional men, but to those made to any other person employed to manage a cause as counsel.

An uncle to a party in a suit is not a proper person to take depositions for such party to be used in the suit.

THIS was a writ of error, brought to reverse a judgment of the court of common pleas. The original action was assumpsit upon an account annexed to the writ brought by Quimby against Bean, before a justice of the peace, and carried to the court of common pleas by appeal, and there tried upon the general issue. It appeared by the bill of exceptions which had been filed in the cause, that upon the trial in the common pleas, Quimby, the original plaintiff, offered in evidence the deposition of one Gilman Sawyer, to the admission of which Bean objected, and proved that the deposition was taken by a justice of the peace, who is the uncle of the original plaintiff, and the magistrate before whom this action was originally commenced, and that the said deposition was taken by said justice after he had given judgment in favour of the original plaintiff. But the court admitted the deposition to be

used at the peril of the party offering it, and it was read in evidence to the jury.

It also appeared, that the original defendant, called one Joseph Nichols as a witness. Nichols made the original writ, and acted as attorney for the original plaintiff, and his name was entered upon the docket as such. But he had never been admitted and sworn in any court as an attorney, nor had he any written power of attorney, authorizing him to bring this suit, or to appear in it. The plaintiff in error proposed to enquire of Nichols, as to communications made to him by the defendant in error, respecting this suit, but it appearing that he knew nothing except what had been communicated to him as counsel, the court ruled that the enquiry was inadmissible.

*Newton, Morse,* and *J. Parker,* for the plaintiff in error.

Depositions ought to be taken before magistrates who stand wholly indifferent between the parties, and it is believed that the uniform practice has been to reject them whenever they were in any way subject to suspicion. In *Shepherd* v. *Thompson,* at the May term of this court in Grafton, 1826, a deposition was rejected because the party had noted down some of the testimony of the witness upon a slate, although the deposition was reduced to writing afterwards by the justice. 5 Mass. Rep. 227, *Amory* v. *Fellows.*

So depositions taken before one who had before acted as agent of the party in taking other depositions in the same cause, were held inadmissible. 2 Greenl. 408, *Smith* v. *Smith.*

And in *Show* v. *Lindsay,* 15 Vesey, 380, the chancellor said, " all courts of justice are extremely anxious to secure the pure examination of witnesses," and he referred to a case where depositions were suppressed, because the commissioners employed the clerk of one of the parties as their clerk.

So, in *Richard Peacock's case,* 9 Coke, 70, it is said that " commissioners to examine ought to be indifferent." A

magistrate, who takes a deposition, should be as indifferent and as far above suspicion of favour, as a juror, or an appraiser.

But an appraiser who is a nephew by marriage to one of the parties is not indifferent. 1 Connect. Rep. 295, *Fox* v. *Hill.* So the uncle of the creditor's wife is not indifferent. 1 Day's Rep. 109, *Tweedy* v. *Picket.*

And it is a principal cause of challenge to a juror that he is of kindred to either party, " for the law presumeth that one kinsman doth favour another before a stranger." Co. Litt. 157, *a.*

The justice was in this case disqualified by reason of his having before tried the cause. It is a principal cause of challenge to a juror, that he has been an arbitrator in the same cause. 9 Coke. 71 ; Kyd on awards, 73 ; Bacon's Ab. " Juries," E 5. And it is a good cause of challenge to the favor, that a juror has acted as a magistrate in taking depositions in the cause. 2 N. H. Rep. 349, *Rollins* v. *Ames.*

The plaintiff in error was entitled to the testimony of Nichols in the trial below. No person is privileged from being examined, except he be of the profession as counsel, attorney, or solicitor. An agent is not. 2 Atkins, 524, *Vaillant* v. *Dodemead* ; Com. Dig. " Chancery," P 7 ; 6 Espin. Rep. *Fountain* v. *Young* ; 2 Starkie's Ev. 396 ; 4 D. & E. 753, *Wilson* v. *Rastell* ; 1 Dallas, 439, *Holmes* v. *Comegys* ; 1 Caine's Rep. 157, *Hoffman* v. *Smith.*

Since the rule is one of policy and necessity, and operates to the exclusion of evidence, its operation is strictly limited to communications made in the course of professional business. 2 Starkie, 397. Neither policy nor necessity requires its extension.

Communications to counsel which are not instructions for conducting a cause are not privileged. 4 D. & E. 431, *Cobden* v. *Kendrick* ; 1 C. & P. 158, *Williams* v. *Mudie* ; 3 Johns. Cases, 198—203, *Riggs* v. *Deniston* ; 13 Johns. 492, *Yordan* v. *Hess.*

*By the court.* We shall, in the first place, consider the question whether Nichols was bound, or could be permitted, to disclose communications which had been made to him by the defendant in error, for the purpose of enabling him to manage the cause?

It is contended on behalf of the plaintiff in error, that the privilege of clients to have their communications to counsel kept secret extends only to communications made to professional men and not to those made to any other description of persons whom they may choose to employ to manage a cause. But we are inclined to think that the law is not so in this state. The statute of February 17, 1791, enacts "that the plaintiff or defendant in any cause, prosecution or suit, being a citizen of this state, may appear, plead, pursue or defend, in his proper person, or by such other citizen of this state, being of good and reputable character and behavior, as he may engage and employ, whether the person so employed be admitted as an attorney at law or not." This statute gives in express terms to every citizen of this state the right to have his cause managed by any person of good moral character, whom he may see fit to employ; and we think this right includes, as a necessary incident without which it cannot be safely enjoyed, the right to instruct those who may be thus employed and to have the trust and confidence thus reposed preserved inviolate in all cases.

But while we are disposed to give to every citizen the full enjoyment of all his rights in this respect, we are not willing to give any countenance to those, who, without the necessary qualifications, undertake to advise as counsel and to commence suits in their neighborhood. It has been supposed that the members of the bar were opposed to the interference of such persons in such matters, because it might tend to injure the business of the profession. But nothing can be further from the truth than such a supposition.

When those, who are not qualified to act as counsel

13

engage in the practice of the law, their blunders are much more likely to increase, than their interference to diminish, the business and emoluments of the profession. No, it is from much better, much higher, much more honorable motives, that the bar withhold all countenance from ignorant obtruders. It is to preserve to the administration of justice some degree of order and regularity, and some degree of purity, that they do this; and this case is a strong illustration of the soundness and utility of the principle, upon which they act. In the commencement of this suit, there was a wide departure from the course that should have been pursued—a departure, which could be justified on no principle, which any member of the bar *in this state* could be found to maintain—a departure, of which no attorney would have dared to be guilty.

The slightest interest renders a magistrate incompetent to try a cause; and the circumstance, that he is of kin to one of the parties renders it at least highly unbecoming in the counsel of such party to ask him to take cognizance of the case. 3 Burr. 1856; 12 Johns. 356, *M'Dowell* v. *Van Deusen*; 13 ditto, 191, *Pierce* v. *Sheldon*; 17 ditto, 133, *Eggleston* v. *Smiley*; 19 ditto, *Bellows* v. *Pearson.*

Another question in this case, is, whether the deposition taken before the uncle of the original plaintiff ought to have been permitted to go to the jury? On this question we have no doubt. The invariable rule by which this court is governed, in the admission of depositions, is not to receive any which have not been taken fairly and with the utmost good faith, before a suitable magistrate, and at a proper time. There is no colour of pretence that the uncle of one of the parties in the cause was a suitable person to take a deposition for that party. And we are of opinion, that the court below erred in admitting that deposition and suffering it to go to the jury, and for that cause the judgment of the common pleas must be reversed.