## SANBORN v. FELLOWS.

A judge who is related to one of the parties within the fourth degree, is disqualified to act.

The duties of fence-viewers are chiefly judicial.

Proceedings before fence-viewers, one of whom is an uncle to one of the parties interested, are void.

Objection may be taken collaterally to the proceedings of any inferior tribunal, where the party grieved has no other remedy.

Want of jurisdiction is a fatal objection to the proceedings of any inferior Court.

ASSUMPSIT. The first count in the plaintiff's declaration alleged, that the defendant, on the first day of July, 1847, being indebted to the plaintiff in the sum of $30.60, for labor and materials in building a fence between land of the plaintiff and adjoining land of the defendant, situate in Hamptonfalls, which the defendant was bound by law to repair, at the defendant's request, promised to pay the plaintiff the same sum, yet, &c.

The second count was for money paid, $7, by the plaintiff for the use of the defendant, at his request, &c. Upon the general issue it appeared, that the action was brought to recover double the appraised value of a division fence erected by the plaintiff on the line between the lands of the parties, upon certain proceedings had before the fence-viewers, of that town, hereafter stated; and to recover the fees paid by him to the fence-viewers for their services.

It was matter of controversy between the parties, whether any part of the fence between their lands was upon the true line between them, whether any line was established between them when the supposed division was made, and whether the division was made with any reference to the line on which the fence was afterwards built.

It appeared that N. P. Cram, who was one of the fence-viewers of the town of Hamptonfalls, for that year, and who acted as such in these proceedings, was an uncle of the plaintiff. A verdict was taken for the defendant, subject to the opinion of the Court; which was to be set aside, and a new trial granted, if the

40 *

objections arising upon those facts should not be considered fatal; otherwise, judgment to be rendered upon the verdict.

*Stickney & Tuck*, for the plaintiff. The first position we shall take is, that the doings of the fence-viewers were not judicial. We shall contend in the second place, that even if they were judicial, the exception cannot be sustained.

First, then, the doings of the fence-viewers were not judicial. They seem to us to have nothing of the judicial character. We apprehend that it is a great mistake to consider all those acts and duties as judicial which involve the exercise of judgment and discretion. *Praru* v. *Atwood*, 13 Mass. 337. It is the office of the judge to declare, expound, and administer the law, and apply it to the various facts and circumstances which arise. So all those inquiries, deliberations, orders, and decrees, which are peculiar to Courts of Justice are, in their nature, judicial acts. *Merrill* v. *Sherburne*, 1 N. H. Rep. 200. It is peculiar also to a judge to have a discretion in the discharge of his duties. The duties of fence-viewers have none of these characteristics. They have no discretion; every step of their duty is marked out by the statute. They are simply to view the fence, and report upon its sufficiency, and they are required to exercise no more judgment in the premises, than an intelligent farmer would exercise in stating, as a witness, whether a certain fence was sufficient to stop ordinary cattle, and how much it would cost.

All that the statute requires of fence-viewers is common sense and common honesty. Nor can it be said that fence-viewers stand in the place of jurors. The office of jurors is to judge of facts. By judging of facts, we mean deciding whether the allegations of parties are facts or not. Fence-viewers have nothing of that kind to do. They hear no testimony whatever; they go upon the ground and see for themselves, and report facts from their own knowledge. They may, with propriety, be considered as mere witnesses. If the statute had authorized the plaintiff to go on and build the fence, as he has done, and bring his action without any application to the fence-viewers, or any interposition on their part, he would have been obliged to bring witnesses to

Sanborn *v.* Fellows.

Court to do precisely what the fence-viewers have done, namely, to testify as to the insufficiency of the former fence, and as to the cost of building the new. The only possible difference is, that the Legislature, on grounds of policy and convenience, has declared, that the testimony of the fence-viewers shall be conclusive. We think it is evident, therefore, that the acts of the fence-viewers in this case were not judicial. But if the Court should decide against us on this point, we are confident that the exception cannot be sustained.

We think it a great mistake to consider that persons performing judicial functions can be excepted to on the same grounds that jurors may. It has been an established principle of the common law from the earliest times, that a juror may be challenged or excepted to, for almost any reason which makes him in the least degree exceptionable ; such as pecuniary interest, kindred, or any real or supposed prejudice, from whatever cause it may arise. But the rule is different in regard to judges. It is laid down by Coke, (1 Inst. 294, a. ; 2 Ib. 422,) that a judge cannot be challenged or excepted to. The same principle is laid down by Blackstone, (3 Comm. 361.) "For the law," says he, "will not suppose a possibility of bias or favor in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea. (See, also, 1 Sullivan's Lectures, 194.) The same principle has been recognized in numerous cases, as the common law of this country. See particularly, *Steamboat Co.* v. *Livingston*, 3 Cow. 724, and *McDowell* v. *Van Deusen*, 12 Johns. 356. In the latter case the defendant pleaded, before a justice, that the justice ought not to try the cause, because he had given his opinion in the case ; to this plea there was a demurrer and joinder. The case was afterwards carried to the Supreme Court, and that Court decided that the demurrer was well taken. The Court said, " admitting the truth of the matter set forth in the plea, it was not such as the defendant could avail himself of to prevent a trial. It is a general principle, that a judge cannot be excepted to or challenged for corruption; but must be punished by indictment or impeachment." Nor is this rule con-

fined to judges of the higher Courts, but extends to all who sustain the judicial character. *McDowell* v. *Van Deusen*, before cited, where the principle is applied to a Justice of the Peace. This principle is, however subordinate to the maxim, — " *Nemo debet esse judex in propria causa.*" For the former is only a municipal regulation, while the latter is founded in the law of nature, which underlies all law. The common law considers one as a party to a cause, when he has the slightest degree of pecuniary interest in it. When a judge, therefore, has any pecuniary interest whatever in the event of a suit, he cannot sit in the trial of it. Com. Dig. Justices I. 3.; 1 Salk. 398; *Pearce* v. *Atwood*, 13 Mass. 324.

This is the only exception to the rule laid down by Coke, and Blackstone, and Sullivan. Kindred to either of the parties, however near, cannot be taken advantage of against a judge except as *evidence*, in connection with other circumstances, of fraud and *unfair dealing*. *Pierce* v. *Sheldon*, 13 Johns. 191. *Eggleston* v. *Smilie*, 17 Johns. 133 ; *Bellows* v. *Pearson*, 19 Johns. 172.

We have no statute on the subject in this State, and so the common law must prevail; and a fence-viewer, considered as a judicial character, is not incompetent to act on account of kindred to either of the parties. We have, it is true, in the thirty-fifth article of our Bill of Rights, the general declaration, that " it is the right of any citizen to be tried by judges as impartial as the lot of humanity will permit." But this is merely introductory to the provision which follows : — that " the judges of the Superior Court shall hold their office during good behavior, and have honorable salaries established by law," and is not to be understood as making any innovations upon the established principles of the common law. We are aware that there are numerous American decisions, which might appear, at first sight, to be somewhat at variance with what we have contended for, as the common-law doctrine upon this subject. But they all turn upon statutory or constitutional provisions. Thus they have a provision in the revised statutes of New York, placing judges upon the same footing with jurors. We accordingly find cases in their later reports where judges are excepted to on account of kindred.

*Foot* v. *Morgan,* 1 Hill, 654 ; *High* v. *Leonard,* 1 Denio, 186 ; *Carman* v. *Newell,* Ib. 25. But there is no attempt made by counsel or Court in these cases to argue from common-law principles ; a strong proof, of itself, that the common law was different. They have similar provisions in Vermont and Connecticut. But these are no rules for us. There are cases, too, where appraisers are excepted to on account of kindred. But these also turn upon the words of the statute. *Fox* v. *Hill,* 1 Conn. 295 ; *Tweedy* v. *Picket,* 1 Day's Rep. 109. There are cases also where depositions are objected to, because they were taken by a magistrate who was of kin to one of the parties. *Bean* v. *Quimby,* 5 N. H. Rep. 94 ; *Whicher* v. *Whicher,* 11 N. H. Rep. 348 ; *Chandler* v. *Brainard,* 14 Pick. 285 ; *Wood* v. *Cole,* 13 Pick. 279 ; *Coffin* v. *Jones,* 13 Pick. 441. But these cases nearly all turn upon statutory provisions. The cases cited from Massachusetts all hold expressly, that a magistrate cannot be excepted to, unless the case comes within the statute. It is held, too, in all these cases, that objections to depositions depend, in the absence of any statute, upon the practice of the Court in respect to the admissibility of evidence.

These cases hold moreover, that it is not the fact of kindred in the magistrate, that furnished objections to the depositions, but the evidence which that fact furnished, that the depositions were tainted with partiality and fraud. The cases from the Massachusetts Reports hold, that the fact of kindred is not even evidence of partiality, unless other circumstances are shown to the same effect. None of the American cases, therefore, impeach the common-law rule, and it must still exist in this state. Then, if one of the fence-viewers can be objected to in this case, it must be because there is evidence of partiality and fraud. But nothing of this kind is pretended. But we stop not here. The exceptions of the defendant must fall for other reasons.

We have already cited the most important decisions, which appear to favor the defendant, and have shown that they all differ materially from the present case ; either because they turned upon pecuniary interest, or upon statutory provisions, or evidence of fraud and corruption. But we have not done with these cases

Sanborn v. Fellows.

yet. There is another important element in them all, which does not exist in the present case, and which we have not yet adverted to. In all the cases which appear to favor the defendant, without a single exception, the party who employed the magistrate or officer, had it in his power to select whom he pleased out of a large number, while his adversary could have no voice in the matter. Under these circumstance, he selected his near kinsman or friend, or one who had a pecuniary interest in the matter, when there was no necessity for it; when there was ample provision made for procuring a man, to whom there would be no objection. In the present case, the plaintiff had nothing to do with selecting N. P. Cram; he had no choice in the matter; the fence-viewers were chosen by the town and assigned to him; it was not for him to consider, whether they were suitable persons or not, for that question belonged to the town, and had been decided by the town; there is no more ground of objection to Mr. Cram, as the case now stands, than there would have been, if the defendant had had the selection of the fence-viewers himself for this case, and had selected Mr. Cram for one of them. The plaintiff was obliged to take the fence-viewers which the town had assigned him, or remain without remedy against the defendant; the law had provided no other course for him. Now there is not to be found in the books a single decision, where a magistrate, or juror, or other officer, had been incompetent to act on account of interest, in a case, when the law had made no provision for a more disinterested person, and when it was necessary that he should act to prevent a failure of justice. Thus, in the case of *Pearce* v. *Atwood*, before cited, the plaintiff had been arrested for riding on the Sabbath, contrary to a statute of the Commonwealth. The justice who issued the warrant was an inhabitant of the town, which was to receive a moiety of the fine imposed upon the plaintiff. The plaintiff objected on this account to the justice's jurisdiction. *Parker*, C. J., after stating that "no man can lawfully sit as a judge in a cause, in which he may have any pecuniary interest," and that "any interest, however small, has been held sufficient to render a judge incompetent," says, "the only exception known

Sanborn *v.* Fellows.

to this broad and general rule exists, when there may be a necessity that the person so interested should act in order to prevent a failure in the administration of justice." So in *Commonwealth v. Ryan*, before cited, the defendant had been indicted at the Municipal Court for the town of Boston, for keeping a billiard table, contrary to the statute. Having been convicted, he took an appeal, and moved, in the Court above, that the indictment should be quashed, because the penalty inured to the town of Boston, and the foreman of the Grand Jury, who found the bill against him, was a taxable inhabitant of that town. In this case the law required the jurors to be returned from the town of Boston, and unless they could sit, there must be a failure of justice. The Court decided that the necessity of the case overruled the objection to the jurors, and that they might sit. See also *Gear* v. *Smith*, 9 N. H. Rep. 63.

It is evident, moreover, that the Legislature intended that no such exception as the one in question, should be taken to fence-viewers. When an office is created by statute, and all its duties defined and pointed out, and no provision is made for cases in which the incumbent may be interested, in such case all objection on account of interest is repelled by the statute. Our view is confirmed by the fact, that the Legislature has made provision for the cases in which it was intended that interest should be an objection to the incumbent of an office. Thus, when a judge of of probate is interested, the judge of an adjoining county officiates. Rev. Stat. chap. 153, § 11. So when a road commissioner is interested, he is to be set aside, and his place filled by the Court. But no such provision is made in regard to fence-viewers. The statute directs, that in certain cases the fence-viewers shall act. It does not permit their duties in any case to be performed by any other person. No one therefore has a right to object, that fence-viewers are incompetent to perform the duties which the law has assigned them. The fence-viewers of Hamptonfalls had as exclusive a right to perform the duties of their office between these parties, as they would have had if the Legislature had passed a law that N. P. Cram and the others should perform the duties for that town. Nor will it avail the defendant

to say, that the other two fence-viewers might have acted in this case without N. P. Cram. For it may frequently happen, that two or all of the fence-viewers are related to one of the parties. Towns, moreover, are not required to choose any more than one fence-viewer; and we think the common practice is to choose only two. In all such cases an objection to one would be as fatal as an objection to two, or all in this case. Nor is this all. Suppose that N. P. Cram was incompetent to act in this case. Who had the power or right to prevent his acting if he chose? Surely the plaintiff had not; all that he could do was to present his petition to the fence-viewers; there his agency in the matter ended. Is he to be punished for that over which he had not the slightest control? Are fence-viewers to be held incompetent to act, whenever they are slightly interested on account of kindred or otherwise? Such a thing was never heard of. If such were the law, it would be impossible for town business to be performed. Selectmen are authorized to lay out highways in their respective towns upon petition, whenever they shall think there is occasion, and take the real estate of corporations and individuals for the purpose, and assess the damages. Such duties must always involve the interests of a large number of persons, and it will very seldom happen, in such case, that all of the selectmen are wholly disinterested; so when a mill is owned by joint tenants, or tenants in common, and any of the cotenants refuse to do their part of the repairs, the selectmen have duties to perform more important than those of fence-viewers. So in the assessment of taxes, the selectmen have important duties to perform. They appraise the property of every individual in their town, and thereby determine what portion of the taxes each shall pay. In every act of that kind they affect their own interest, and the interest of all their relatives within the town. They have authority too in certain cases to doom the citizens of the town in such sum as they judge proper.

Town officers are not expected to be acquainted with any law, except what they find in the statute book. When they have followed the course laid down for them, and complied with all the requisitions of the statute, they have done their whole duty.

If they are to be subjected to the same rigid rules, that jurors are, they will never know when to act, nor what to do. The Legislature having made no provision, that selectmen or other towns officers shall be displaced, when affected by kindred or interest, any objection to them on this account is repelled by the silence of the law-making powers on the subject.

*Wells & Bacon,* for the defendant.

BELL, J. It is so obvious a principle of justice, that all persons who are to act as judges, should be impartial, without any interest of their own in the matter in controversy, and without any such connexion with the parties in interest, as would be likely, improperly, to influence their judgment, that it is hardly possible to doubt that such impartiality was required by the Common Law. Blackstone, (3 Comm. 361,) says: "By the Civil and Canon Laws, a judge might be refused upon any suspicion of partiality. By the laws of England, also, in the times of Bracton (*l.* 5, *c.* 15,) and Fleta (*l.* 6, *c.* 37,) a judge might be refused for good cause ; but now the law is otherwise, and it is held, that judges and justices cannot be challenged ;" and for this position, he cites Co. Litt. 294 a. Coke so states the law, but he cites no authority for that position, and his opinion, great as its weight is admitted to be, is not sufficient to overrule Bracton and Fleta, as to the ancient law, or to prove that a change has been made in it, subversive of the first principles of justice. The books abound with cases, in which it is decided, that judges are disqualified to act by any, the least, interest in the matter to be decided, and render it clear to us, that the common law, of the time of Bracton and Fleta, has always been, and still is, the law, though it may, perhaps, be literally true, that judges cannot be challenged in the manner of jurors. We should not expect to find many cases, where this question has arisen in relation to that class of officers usually called judges, because any attempt by such a person to act as a judge, in a case in which he was personally interested, or in which any of his near relatives are interested, would be so grossly

indecent and improper that it would be at once condemned by public opinion.

The question as to the disqualification, arising either from interest or relationship, has most frequently been raised in relation to jurors, who are not presumed to be familiar with the law, or aware, as judges ought to be without challenge, in what cases they ought to withdraw or excuse themselves.

In their case, we find the law laid down with great clearness by Lord Coke, and upon abundant authority. (Co. Litt. 157 *a.*) " If the juror be of blood or kindred to either party, he is disqualified, for that the law presumes, that one kinsman doth favor another before a stranger ; and how far remote soever he is of kindred, the challenge is good, and it is no counterplea to say, that he is of kindred also to the plaintiff, though he be in a nearer degree, for that the words of the *venire facias* forbiddeth the juror to be of kindred to either party. Affinity by marriage is a principal challenge, and equivalent to consanguinity, when it is between either of the parties ; as if the plaintiff or defendant marry the daughter or cousin of the juror, or the juror marry the daughter or cousin of the plaintiff or defendant, and the same continues or issue be had." 7 Cowen, 479, note (*a*).

The rule is laid down less broadly in 3 Black. Comm. 363, and 2 Tidd's Prac. 780, citing Finch's Law, 401, thus : a principal challenge is such, where the cause assigned carries with it evident marks of suspicion, either of malice or favor ; as that a juror is of kin to either party, within the ninth degree, &c., which, if true, cannot be overruled; for jurors must be *omni exceptione majores.*

The general principle, as to the disqualification of jurors, by relationship, is recognized here by the Provincial Statute, (Prov. Laws, 1771, 191,) 9 N. H. Rep. 65, and by the Revised Statutes, chap. 176, § 21, which provide, that any juror may be required by the Court to answer upon oath, " whether he is related to either party." But we are not aware that this objection has in this country been extended to *every* degree of relationship, or to relationship so remote as the *ninth* degree. Many cases have been decided upon this principle of the common

law in this country. *Cain* v. *Ingham,* 7 Cowen, 478 ; *Churchill* v. *Churchill,* 12 Vermont, 661 ; *Rank* v. *Shervey,* 4 Watts, 218 ; *Hinchman* v. *Clark,* Cox, 446 ; *Paddock* v. *Wells,* 2 Barb. Ch. Rep. 331 ; *Eggleston* v. *Smiley,* 17 Johns. 133.

The principle on which a juror is disqualified by interest, is laid down by Lord *Mansfield* in *Haskett* v. *Braddock,* 3 Burr. 1847, in such terms as must apply with equal force to the case of relationship as to interest, and to the case of judges as to jurors. The action was brought for a fine, incurred by a breach of a by-law of the City of Chester, prohibiting persons not free-men, from trading in the city. It was brought in the Portmote Court, there held before the Mayor. It appeared, that the custom required, that the sheriff and jurors, as well as the Mayor, should be freemen. There was a challenge to the array, as well as to the favor, which was overruled by the Court. Lord *Mansfield,* C. J. " We are all of the opinion, that neither the sheriff nor the jury were competent; and the challenge was im-properly overruled at the Portmote Court. There is no prin-ciple of law more settled than this, that any degree, even the smallest, of interest in the question depending, is a decisive ob-jection to a witness, and much more to a juror, or to the officer by whom the jury is returned. The law has so watchful an eye to the pure and unbiased administration of justice, that it will never trust the passions of mankind in the decision of any matter of right. If, therefore, the sheriff, a juror or a witness, be in any sort interested in the matter to be tried, the law considers him as under an influence, that may warp his integrity or per-vert his judgment, and therefore will not trust him." He adds : " In the case of *Day* v. *Savage,* Hob. 87, the suit was an action of trespass between two persons, but an issue being taken upon a custom of London, ' for every freeman to be discharged of wharfage,' the Court would not suffer the custom to be proved by the recorder, [the principal judge of the city] ; and on this occasion they held, that where the issue concerns the corpora-tion, though they are not directly parties to the suit, if they are to make the panel, or any of their body are to go upon the jury, it is a cause of challenge."

It is easy to perceive, what would have been the decision, if the question raised had related, as it might have done, to the judge below, instead of the sheriff and jurors; or if the influence " that might warp the integrity or pervert the judgment" of either, were that of kindred, instead of a minute corporate interest.

In commenting upon this case, Ch. J. *Parker*, says: " There can be no doubt, that the principle applies with equal strength to judges or magistrates, as to jurors." *Pearce* v. *Atwood*, 13 Mass. 341, and *Gilchrist*, J., in *Russell* v. *Perry*, 14 N. H. Rep. 154, says, of this case: " Although a judge or magistrate is not, in terms, comprehended within this general exclusion on account of interest, the principle applies with equal strength to them."

Numerous cases support the principle, that any interest whatever disqualifies a judge, as Com. Dig. Justices, I. 3; *Anon.* 1 Salk. 397; 2 Salk. 607; Hard. 503; 12 Mod. 669; *Bonham's case*, 8 Co. Rep. 118; *Pearce* v. *Atwood*, 13 Mass. 324; *Bates* v. *Thompson*, 2 Chip. 99; 5 Mass. 92; 6 Pick. 109; *Gorril* v. *Whittin*, 3 N. H. Rep. 265; *Russell* v. *Perry*, 14 N. H. Rep. 152; *Ins. Co.* v. *Price*, Hopk. 1, &c.

Though the decisions are not numerous, which establish the proposition that a judge is disqualified to act as such in a case where he is a relative of either of the parties, they lead clearly to the conclusion, that the same rule applies to a judge, as to a juror.

In New York, a doubt was suggested on this point, in *Pierce* v. *Sheldon*, 13 Johns. 191, which followed *McDowell* v. *Van Deusen*, 12 Johns. 356, in which it was held, that a judge cannot be excepted to or challenged for corruption, upon the authority of Coke. (1 Inst. 294; 2 Inst. 422); but in *Bellows* v. *Pierson*, 19 Johns. 172, the Court held, that the fact, that the justice before whom a suit was brought was the son-in-law of the plaintiff, and that he persisted to hear and decide the cause, notwithstanding the defendant objected to his jurisdiction, on the ground of his relationship to the plaintiff, is itself evidence that the trial was not fair and impartial; and in the Court of

Sanborn *v.* Fellows.

Errors, two of the senators and judges were allowed to withdraw from their seats; one on the ground that he was interested; the other, because he was related to persons having an interest. *Ins. Co.* v. *Livingston*, 3 Cowen, 713. These cases preceded the passage of the Revised Statutes of New York, which provide, that no judge of any court can sit as such in any cause in which he would be excluded from being a juror, by reason of consanguinity or affinity to either of the parties. 2 Rev. Stat. 275 ; see 9 N. H. Rep. 66. This enactment seems to us but a restoration of the common law, and was probably occasioned by the decisions, which had cast a doubt upon the principle.

In *Foot* v. *Morgan*, 1 Hill, 654, it was held, that a justice cannot act in a cause, in which the real party in interest, though not the nominal party, has married the sister of the justice's wife. In the matter of *Happer*, 5 Paige, Ch. Rep. 489, and *Underhill* v. *Dennis*, 9 Paige, 202, it was held, that this statute did not apply to a case where the relative of the judge has no personal interest ; and in *Paddock* v. *Wells*, 2 Bar. Ch. Rep. 331, it is held, that the proper course for a judge, when he is satisfied of the fact of his relationship to either of the parties in interest in the suit, although there be nothing before him at the time to show the existence of the relationship, is to refuse to hear, unless both parties, upon being informed of the facts, join in a request to hear and decide it ; or unless it be a case, where, under the Constitution, no other judge or tribunal can hear the cause.

In Connecticut, by statute, (Laws of Conn. 424, *ed.* 1808,) no person can sit as a judge in any case, where a relationship exists between him and a party, in the degree of father and son, brother and brother, or uncle and nephew ; and a like statute exists in Vermont, (9 N. H. Rep. 66,) and in *Winchester* v. *Hindsdale*, (12 Conn. 88,) it was held, that where a party to a suit had married the aunt of the judge, but she died before the suit was brought, leaving children who were living at the trial, the judge was not disqualified.

In *Bayard* v. *McLane*, 3 Harr. 139, in Delaware, it was held, that the relationship of brother-in-law to a party in a cause,

41 *

is a legal exception to a judge, and disqualifies him from sitting in the cause.

In *Waterhouse* v. *Martin*, Peck. 374, it is held, that "by the Constitution of Tennesee, the consent of both parties is necessary to qualify a judge to sit in a cause, when he would otherwise be incompetent by reason of consanguinity or affinity. The affinity which disqualifies a judge must extend to himself; if it only extends to his relations, it is too remote, and the degree which disqualifies is to be decided by the Court. It does not rest with the judge alone, whose right to sit is questioned." The provision of the Constitution of Tennesee referred to, is as follows: "No judge of the Supreme or inferior Courts shall preside on the trial of any cause in the event of which he may be interested; or where either of the parties shall be connected with him by affinity or consanguinity within such degrees as may be prescribed by law; in which he shall have been of counsel, or in which he may have presided in any inferior court, except by consent of all the parties." In our view this is but an affirmance of the common law, and in effect, the same as the 35th article of our own Bill of Rights, which declares, that "It is essential to the preservation of the rights of every individual, his life, liberty, property and character, that there be an impartial interpretation of the laws, and administration of justice. It is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit."

This question can hardly be deemed an open one in New Hampshire. In the case of *Bean* v. *Quimby*, 5 N. H. Rep. 98, it was decided that an uncle of one of the parties was disqualified by the relationship to take a deposition to be used in the case. In *Gear* v. *Smith*, 9 N. H. Rep. 63, where a poor debtor had applied to two justices to be permitted to take the poor debtor's oath, and one of the justices was his uncle, but no objection was made on that account, because the fact was not known to the creditor, in a suit upon the debtor's bond, the discharge was held invalid, because the uncle was disqualified by the relationship, to act as one of the justices.

In *Whicher* v. *Whicher*, 11 N. H. Rep. 350, where the

general principle was involved in the question, whether one who had acted as counsel for a party in that cause, was qualified to take depositions to be used on the trial, the learned judge says : " We are not aware that Courts have ever admitted the power of a magistrate to perform any official act, in relation to a matter in which he had a pecuniary interest, or where he had been so connected with either of the parties as to throw a suspicion on his impartiality ; " and showing very conclusively, that " the duty of a magistrate, in taking a deposition, is essentially judicial in its character : " he adds, " to hold that a magistrate, invested with such varied powers, should not be as impartial as the lot of humanity will admit, is to apply to him a rule, which never obtains in any other case, where men are appointed to decide upon the rights of others. He should certainly be as impartial as a juror, and like him should be *omni exceptione majore.*"

In 1643, the General Court of Massachusetts, whose jurisdiction then extended over New Hampshire, passed a law on this subject, which remained in force when the connexion of the two Provinces ceased, and we believe has ever since remained in force, as part of the common law here. It is as follows :

" For preventing of occasions of partial and undue proceedings in Courts of Justice, and avoiding jealousies, which may be taken up against the judges in that kind, it is ordered that, in every case of a civil nature, between party and party, where there shall fall out so near relation between any judge and any of the parties, as between father and son, either by nature or marriage, brother and brother in like kind, uncle and nephew, landlord and tenant in matters of considerable value, such judge, though he may have liberty to be present in Court at the time of the trial, and give reasonable advice in the case, yet he shall not have power to vote or give sentence therein ; neither shall he sit as judge, but beneath the bench, when he shall so plead, or give advice in the case. 1 Mass. MS. Records, 322." *

---

* This provision was enacted, almost in the same words, in the first statutes passed in New Hampshire after the establishment of the Provincial Government, at a session held March 16, 1679, '80, entitled, THE GENERAL LAWS AND LIBERTIES of the Province of New Hampshire.

Sanborn *v.* Fellows.

For a period of forty years or more preceding the revolution, an examination of the Records of the Courts shows, that at many terms of the Superior Court, and Court of Common Pleas, special judges were appointed to supply the want of a quorum of permanent judges, to act in particular cases, occasioned by the relationship of some of the judges to the parties, or by the interest of the judges as proprietors of common lands; and the same practice continued, though less frequently, until the adoption of our present Constitution.* Since that time, provision is made for dispensing with the usual quorum where one or more of the judges are *legally disqualified* to sit in any case. Stat. 1815; Rev. Stat. 341, chap. 171, § 10; chap. 172, § 2.

The order of the Massachusetts General Court draws the line of exclusion between the cousin-german related in the fifth degree, and the uncle and nephew related in the fourth degree, according to the computation of the civil law; which is also the dividing line between those who may intermarry, and those who may not. Rev. Stat. chap. 147, §§ 1, 2, and the same limit is recognised by the Statutes of Connecticut and Vermont. 9 N. H. Rep. 66; 14 N. H. Rep. 155; *Hill* v. *Wait,* 5 Vermont, 124. The cases of *Bean* v. *Quimby,* and *Gear* v. *Smith,* extend to the same point, the fourth degree, and within that degree we think it clear, that all officers should be held disqualified to exercise any judicial power. Beyond that degree, the relation is here very little regarded, but we are not now called upon to consider how far it is a disqualification.

The duties of fence-viewers, we think of a character chiefly judicial. It is not necessary that a magistrate or board should

---

*At the Superior Court, August Term, 1733, Henry Sherburn, Nathaniel Wear, and Nicholas Gilman, were justices. In the action, "Thomas Turner, appellant *v.* William White, appellee. On the motion of the appellant, he making objections against the judges, as not being competent judges, in that cause, it is therefore ordered that he apply to his Excellency, and make manifest the relation the judges stand in to the case, and if his Excellency see fit to appoint new judges on a special Court; and if no order thereon, to come to trial next term, by the Court then in being." At the next term, February, 1733, '4, the same justices attending, the case was tried before Nathaniel Wear, Jotham Odiorne, and Ellis Huske, the two latter special justices.

act formally as a Court, or that they should be usually so deno-
minated or considered. If they are bound to notify, and hear
the parties, and can only decide after weighing and considering
such evidence and arguments, as the parties choose to lay before
them, their action is judicial.

By the Revised Statutes, chap. 136, § 13, the fence-viewers
shall give notice in writing to the other party interested therein,
of every application, and of the time and place appointed for
considering the same ; shall hear the parties, if they attend, and
their evidence, and shall reduce their decision to writing, which
shall be signed, and they shall cause a copy thereof to be given
to each of the parties within one week. " Sect. 16. The deci-
sion of the fence-viewers, upon their being duly sworn, shall be
final and conclusive upon the parties ; " see *Whicher* v. *Whicher*,
11 N. H. Rep. 353, where it is held upon the most satisfactory
reasons, that the duties of a justice in taking a deposition, are
judicial.

The principle is well settled, that, wherever a tribunal possesses
qualified and limited powers, authorizing them to act in certain
specified cases only, and by special modes of proceeding, and
the law has provided no mode by which these proceedings can
be revised, there the proceedings may be impeached, collaterally,
by showing that the court or magistrates have acted in a case
where they have no jurisdiction, or by modes of procedure
which they are not authorized to adopt.

In *Bonham's case*, 8 Co. Rep. 121, which was trespass and
false imprisonment against the Censors of the College of Phy-
sicians, who justified under a charter which authorized them
to fine and imprison persons practising physic in London with-
out license, a judgment imposing such fine and imprisonment,
and imprisonment under a warrant for non-payment, — *Coke*, C.
J., lays down the law to be, that the censors cannot impose a
fine or imprisoment without a record of it. The cause for which
they impose fine or imprisonment ought to be certain, *for it is
traversable.* For, although they have letters-patent, and an act
of parliament, yet, because the party grieved has no other
remedy, neither by writ of error, nor otherwise, and they are
not made judges, nor a court given to them, but have an au-

thority only to do it, the cause of their commitment is traversable; as, upon the Statute of Bankrupts, their warrant is under the great seal and by act of parliament, yet, because the party grieved has no other remedy if the commissioners do not pursue the act and their commission, he shall traverse, that he is not a bankrupt, though the commissioners affirm him to be one. See the cases relating to the poor debtor's oath, where this principle is of familiar application. *Gear* v. *Smith, ante,* &c.

Where the defect in the proceedings consists, as in this case, of the want of jurisdiction to act in the case, it falls within the much broader principle in *Russell* v. *Perry,* 14 N. H. Rep. 155, and the cases there collected, "that a judgment of an inferior court, which has no jurisdiction of the subject-matter, is *coram non judice* and void."

Without considering the soundness of the rule adopted in Massachusetts, (*Pearce* v. *Atwood,* 13 Mass. 324,) on which reliance is placed by the defendant, that a judge may sit in a cause in which he is interested "if it be necessary, to prevent a failure in the administration of justice," which does not seem to us to be easily reconcilable with the clause of our Bill of Rights, to which reference has been made, it is sufficient for this case, that here there was no necessity for the uncle of the plaintiff to act in his case. There were three fence-viewers elected and qualified. By the Revised Statutes, chap. 1, § 13, where powers are conferred on a board, a majority may act. The other two had all the powers of the whole number, and the decision of the two would be free from this objection. It is not necessary to consider in this case, what would be the consequence if a majority of the fence-viewers were disqualified by interest or relationship; perhaps it might operate like the case of vacancies, arising from failure to elect, or from death, or removal from town; in which case, it is supposed, proceedings must be delayed, until the vacancies are filled.

Our conclusion then is, that one of the fence-viewers being disqualified to act, by his relationship to one of the parties, the proceedings before him were *coram non judice* and void, and furnish no foundation for the plaintiff's claim.

*Judgment on the verdict.*