May 26,
1955.  } No. 4419.

OPINION OF THE JUSTICES.

The following resolution adopted by the House of Representatives on April 27, 1955, was filed in this court April 27, 1955:

"Whereas House Bill No. 424, An act creating an industrial development authority is now pending in the House of Representatives:

"And Whereas there is doubt as to the constitutionality of the provisions of section 9 of said bill relative to the issuance of notes

and purchase by the state treasurer;

"Resolved that the Justices of the Supreme Court be respectfully requested to give their opinion upon the following question of law:

"Do the provisions of section 9 of the bill appear to be in conflict with the Constitution?

"Further Resolved that the Speaker transmit six copies of this resolution and of House Bill No. 424 to the Clerk of the Supreme Court for appropriate action."

The following answer was returned:

*To the House of Representatives:*

The Justices of the Supreme Court make the following reply to your request for advice upon the question of whether the provisions of section 9 of House Bill 424 appear to be in conflict with the Constitution.

House Bill 424 provides for the creation of an Industrial Park Authority, "a body corporate and politic as an agency of the state" (*s.* 2), through which areas suitable for the development of additional industries and known as industrial parks, together with necessary facilities such as transportation, water and sewage, would be developed, maintained and operated. The Authority would have power to acquire, hold and dispose of personal property, to acquire, sell and lease real property, and to collect fees for services made available within the parks. *Ss.* 5(4), 5(6), 5(8). It would also be authorized to expend money to develop, as an industrial park, real property owned by any local development organization having as its primary function the promotion, encouragement and development of industrial growth; and to construct upon any such property not more than one "suitable industrial building." *S.* 6. All property owned by the Authority would be exempt from levy and sale on execution (*s.* 5) and from taxation (*s.* 11).

The section to which your inquiry relates (*s.* 9) would empower the Industrial Park Authority, in the financing of its development of industrial areas and facilities, to "issue to the state treasurer its notes . . . in an amount outstanding at any one time sufficient to enable the authority to carry out its functions under this act" and authorize the State Treasurer "to purchase the notes of the

authority," using therefor "any funds over which the state has exclusive control."

An appropriation of public money for a private purpose is forbidden. Legislation resulting in or leading to taxation for such a purpose is equally invalid. A loan of public money, like a pledge of the public credit, creates an obligation which requires or may require money to be raised by taxation and "stands on equal footing with one that is certain to do so." *Opinion of the Justices*, 88 N. H. 484, 489. The validity of section 9 depends upon "the essential character of the direct object of the expenditures which must determine [the bill's] validity." *Opinion of the Justices*, 94 N. H. 515, 517. The question is whether the expenditures will be primarily of benefit to private persons or private uses, which is forbidden, or whether they will serve public purposes for the accomplishment of which public moneys may properly be used.

The first section of the proposed act declares that there is a state-wide need for the development of additional industry and areas suitable for such development "for the preservation and betterment of the economy of the state and its inhabitants"; that the purpose of the act is to provide such areas "so as to provide and encourage orderly industrial development in the best interests of the state"; and that "the purposes of this act are public." Such legislative declarations would be entitled to weight in construing the statute and in determining whether it promoted a public purpose, even though they would "have no magical quality to make valid that which is invalid." *Velishka* v. *Nashua*, 99 N. H. 161, 165. It is the essential characteristics of the bill which must determine its validity, rather than its declared purpose. *Opinion of the Justices*, 98 N. H. 527, 528.

The proposed act presents a double aspect in that in some respects it would confer a benefit upon the public and in others would result in benefits to private individuals. Such legislation is not necessarily invalid because individuals as such may profit, nor is it necessarily valid because of benefits provided for the public. *Velishka* v. *Nashua, supra; Opinion of the Justices*, 94 N. H. 515; *Opinion of the Justices*, 88 N. H. 484. As above stated, the question is whether it bears directly and immediately or only remotely and circumstantially upon the public welfare.

The direct object of this bill is to encourage new industrial development in this state by providing suitable areas, buildings and facilities on such terms as will prove attractive to persons

wishing to engage in private enterprise. However, under the bill in its present form, "the preservation and betterment of the economy of the state and its inhabitants" which it also seeks to provide might prove to be merely incidental and subsidiary to assistance rendered to private industry, rather than "a promotion of the general welfare which incidentally benefits certain individuals, and which is proper." *Conway* v. *Water Resources Board,* 89 N. H. 346, 351. In such a case the public purpose accomplished would be no more than the indirect public advantage which accompanies industrial welfare and general prosperity. The expenditure of public funds under such circumstances, "even if the public advantage takes specific form . . . [would be] a violation of the constitutional principle against taxation for private purposes." *Opinion of the Justices,* 88 N. H. 484, 488. *Opinion of the Justices,* 88 N. H. 494. See *Opinion to the Governor,* 79 R. I. 305.

We find in the bill no standard or guide to control the action of the Authority in exercise of its delegated powers in furtherance of the general policy laid down by the Legislature. *Cf. Conway* v. *Board, supra,* 352. See *Ferretti* v. *Jackson,* 88 N. H. 296, 302.

The act which established the Water Resources Board, as amended, (R. L., c. 266, s. 6) calls for administrative hearing and determination that any proposed undertaking "will be of public use and benefit and within the authority conferred." *Conway* v. *Board, supra,* 352. The procedure thus established was thought to furnish the "judicial test of probative evidence" (*Opinion of the Justices,* 88 N. H. 484, 492) needed to adequately insure that "the purpose of the project is confined to the Legislature's declared objects, and free from any character as an undertaking for which benefit to particular persons or private enterprises is its substantial inducement." *Id.,* 493. The validity of this and other legislation containing analogous provisions has been upheld. *Opinion of the Justices,* 94 N. H. 515, 518; *Opinion of the Justices,* 95 N. H. 548; *Conway* v. *Board, supra*; *St. Regis Co.* v. *Board,* 92 N. H. 164, 175-6; *Velishka* v. *Nashua,* 99 N. H. 161, 167-8.

House Bill 424 makes no provision for determination that particular undertakings by the Authority will serve the public purpose. No method is provided for establishing in a particular instance the fact that the public is not "already adequately served," so that a proposed undertaking will actually be "for the public use and purpose." *Opinion of the Justices,* 88 N. H. 484, 488. In the absence of standards to guide and control the action

of the Authority in the exercise of its powers (*Ferretti* v. *Jackson*, 88 N. H. 296), and of provision for "authoritative finding" that a particular undertaking will be within the stated purpose of the act (*Opinion of the Justices*, 88 N. H. 484, 491-493; see *Conway* v. *Board, supra,* 351, 352) and not primarily for the benefit of private users (*Conway* v. *Board, supra,* 350), the bill is open to constitutional objection. Hence the provisions of section 9 of the bill, must be considered in conflict with the Constitution.

Our opinion is requested and given with respect to the bill in its present form. Consequently it should not be taken to necessarily imply that the bill is incapable of revision to meet constitutional requirements. The need for the proposed legislation and the wisdom of its adoption are matters for the Legislature to determine. See Laws 1951, *c.* 328; Dalton: The Community Development Corporations in New Hampshire (1954).

It is our present judgment that section 9, if enacted as a part of House Bill 424 in its present form, would conflict with the Constitution.

FRANK R. KENISON.
LAURENCE I. DUNCAN.
AMOS N. BLANDIN, JR.
EDWARD J. LAMPRON.
JOHN R. GOODNOW.

May 26, 1955.

*Richard C. Duncan,* Assistant Attorney General, for the bill.