Public Utilities Commission
No. 6916

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE

v.

LOVEJOY GRANITE COMPANY

September 30, 1974

*Sulloway, Hollis, Godfrey & Soden* and *Martin L. Gross (Mr. Gross* orally) for the plaintiff.

*Devine, Millimet, Stahl & Branch (Mr. Shane Devine* orally) for the defendant.

*Warren B. Rudman,* attorney general, and *Roger G. Burlingame,* attorney, by brief for the State of New Hampshire, amicus curiae.

GRIFFITH, J. The Public Service Company of New Hampshire seeks an order from the public utilities commission determining the necessity for and establishing the damages to be paid for an easement over certain land of the defendant, Lovejoy Granite Company. The commission granted the plaintiff's motion to transfer to this court the following question: "Do the provisions of RSA 371:1-a or RSA 498-A:1 govern the determination of the issue of

damages arising in cases of eminent domain covering public utility facilities?"

RSA ch. 498-A (Supp. 1973) was enacted by Laws 1971, ch. 526 with the intent "to provide a complete and exclusive procedure to govern all condemnations of property for public purposes and the assessment of damages therefor." RSA 498-A:1 (Supp. 1973). It created a commission of eminent domain to determine just compensation for land condemned for public purposes and provided that "[a]ll acts or portions of acts inconsistent herewith are hereby repealed." RSA 498-A:29 (Supp. 1973).

RSA ch. 371 granted public utilities the right to take property by eminent domain and established the public utilities commission as the tribunal to determine both the necessity for the taking and the compensation to be paid. Laws 1971, ch. 357 enacted chapter RSA ch. 162-F (Supp. 1973) establishing procedures for long-range planning of bulk electric power plants and a site evaluation committee consisting of various heads of agencies concerned with environment and the chairman of the public utilities commission and its chief engineer. This statute also amended RSA ch. 371 by adding electric generating plants and electric substations to the purposes for which a public utility could seek to exercise eminent domain. Finally, it enacted the following new section RSA 371:1-a (Supp. 1973): "Procedure. Notwithstanding the procedures set forth in any other chapter, this chapter shall apply to all cases of eminent domain concerning public utility facilities."

Laws 1971, ch. 357 was approved June 25, 1971, and the pertinent provisions were effective June 25, 1971. Laws 1971, ch. 526 was approved July 7, 1971, and the repeal section (RSA 498-A:29) was effective January 1, 1972. There is no apparent significance in the fact that Laws 1971, ch. 526 was approved after Laws 1971, ch. 357 where both were passed at the same session and there was only a lapse of a few days between enactments.

"[P]assage of two statutes on the same subject in the same session of the Legislature is strong evidence that they were

intended to stand together." *Marshal House, Inc. v. Rent Control Bd.*, 358 Mass. 686, 698-99, 266 N.E.2d 876, 885 (1971). Furthermore, there is a strong policy in this State against an implied repeal of a statute *(Club Jolliet, Inc. v. Manchester*, 110 N.H. 172, 178, 262 A.2d 844, 848 (1970)) "if any other reasonable construction may avoid it." *Hayes v. Archambault*, 106 N.H. 434, 436, 213 A.2d 422, 424 (1965).

There were statements by legislators at the time of the enactment of RSA ch. 498-A (Supp. 1973) that it was intended to replace all other methods of condemnation of property and we so stated in dictum in *State v. White*, 113 N.H. 663, 666, 312 A.2d 711, 713 (1973). However, the legislative statements do not indicate that it was considered in its relation to RSA ch. 371 (Supp. 1973) and we are now of the opinion that it was not intended to replace the public utilities commission as the forum for determining damages in public utility takings.

In addition to the language specifically exempting public utility eminent domain procedure from any other procedure than that in RSA ch. 371 (Supp. 1973), there are other indications of the legislative intent to retain the public utilities commission for the assessment of damages in such cases. RSA ch. 371 (Supp. 1973) provides for determination by the commission of both the necessity for the taking by the utility and the assessment of damages for such taking "as may be needed". *Id.* This provides for a determination in one hearing of both the necessity for the taking, any limitation thereon and the damages. If damages were required to be determined by the eminent domain commission under RSA ch. 498-A (Supp. 1973) there would first have to be a hearing under RSA ch. 371 (Supp. 1973) to determine the necessity of the taking since RSA ch. 498-A (Supp. 1973) contains no provision for such a determination. Significantly, while RSA 371:14 provides for the collection of fees in eminent domain proceedings from the utilities concerned, RSA 498-A:21, 22 (Supp. 1973) allocates expenses by the eminent domain commission to the state agencies involved.

On the basis of all competent evidence available *(see Chag-*

634

*non v. Union-Leader Co.,* 104 N.H. 472, 473-74, 190 A.2d 721, 722 (1963)), we find that the legislative intent in enacting RSA 371:1-a (Supp. 1973) was to exclude eminent domain in public utilities cases from the provisions of RSA ch. 498-A (Supp. 1973) and to leave the issue of damages in such cases for the public utilities commission.

*Remanded.*

All concurred.