Hillsborough
No. 84-424
No. 84-426

CLINTON MERRILL & a.

v.

CITY OF MANCHESTER AND MANCHESTER HOUSING AUTHORITY

JOHN H. GADD AND NANCY J. GADD

v.

CITY OF MANCHESTER AND MANCHESTER HOUSING AUTHORITY

August 16, 1985

*Eaton, Solms, Mills & McIninch*, of Manchester (*Richard E. Mills* on the brief and orally), for the plaintiff Clinton Merrill.

*John H. Gadd*, by brief and orally, pro se.

*Craig, Wenners & McDowell,* of Manchester (*William H. Craig* on the brief and orally), for the defendant Manchester Housing Authority.

*Thomas R. Clark,* assistant city solicitor, filing a joint brief with Manchester Housing Authority, by brief and orally, for the defendant City of Manchester.

*Barto & Gfroerer,* of Concord (*Mark H. Puffer* on the brief and orally), for Society for the Protection of New Hampshire Forests, as *amicus curiae.*

BATCHELDER, J. The plaintiffs appeal from a decree of the Superior Court (*Goode,* J.) approving the report of a Master (*Mayland H. Morse, Jr.,* Esq.) which denied their petitions to enjoin the defendants from taking their land by eminent domain for an industrial park pursuant to RSA chapter 205. We reverse and remand.

The circumstances which give rise to this dispute were set forth in detail in *Merrill v. City of Manchester,* 124 N.H. 8, 466 A.2d 923 (1983), and briefly are as follows. The plaintiffs own twenty-six industrially zoned acres in Manchester. The Merrill tract comprises twenty-three acres of forest land under current use assessment. *See* RSA ch. 79-A (Supp. 1983). The Gadd tract comprises the remaining three acres. Both properties lie within the boundaries of a 109-acre tract sought to be developed as an industrial park by the defendants, the City of Manchester and the Manchester Housing Authority.

We reverse the denial of the petition to enjoin and remand with instructions to grant the petition in both cases. A reversal of the decision is required because we find that the constitutional requirement that the condemnation serve a public use is not here satisfied.

Under part I, article 12 of the State Constitution, the power of eminent domain may be exercised only if the condemned property is "applied to public uses." Whether a particular use is a public use is a question of law to be resolved by the courts. *See Velishka v. Nashua,* 99 N.H. 161, 165, 106 A.2d 571, 574 (1954). In gauging the constitutionality of a proposed condemnation, we must determine "whether the expenditures will be primarily of benefit to private persons or private uses, which is forbidden, or whether they will serve public purposes for the accomplishment of which public money may properly be used." *Opinion of the Justices,* 99 N.H. 528, 530, 114 A.2d 514, 516 (1955) (construing part II, article 5 of the State Constitution).

■■ In determining whether the purpose for which property is being condemned is a public use, we must accordingly consider the extent to which the proposed project will benefit the public. *See Anderson v. McCann*, 124 N.H. 249, 251, 469 A.2d 1311, 1313 (1983). The net benefit to the public will consist of the benefits of the proposed project and the benefits of the eradication of any harmful characteristics of the property in its present form, reduced by the social costs of the loss of the property in its present form. If the social costs exceed the probable benefits, then the project cannot be said to be built for a public use. In such a case, the true benefits of the project will accrue only to its private sponsors and participants, and the use of the power of eminent domain will violate the public use requirement of part I, article 12 of the State Constitution.

■ In the instant case, the master made only general findings regarding the public benefits that would result from the proposed industrial project. The record discloses that such benefits would include the enhancement of the local economy, an increased tax base, and new employment opportunities. The master concluded that the loss of the property in its current state did not have any social costs that could offset these indirect benefits of the proposed industrial project:

> "The indirect public benefit derived from the planned development more probably than otherwise will be a significant and material benefit of the project. This contrasts sharply with *the absence of any proven public benefit* that may be found to exist by allowing either of these properties to remain in their current state."

(Emphasis added.) This statement neglects the legislatively declared public benefit of the preservation of open land, such as the Merrill tract, which qualifies for current use assessment. See RSA ch. 79-A (Supp. 1983). We hold that such land, as long as it poses no threat of actual harm to the community, may be condemned for redevelopment purposes only if it is to be put to use which directly benefits the public, such as for a school, a playground, or a utility line, and not to a use which has only an incidental public benefit, such as for the private industrial park contemplated in the instant case.

Recognizing the recreational, scenic, and ecological importance of this State's open lands, the legislature in enacting RSA chapter 79-A (Supp. 1983) sought to prevent the development of such lands due to the pressure of high tax assessments. *See* N.H. CONST., pt. II, art. 5-b. The statute requires that the value of qualifying land be assessed by the local assessors on the basis of its current use, RSA

79-A:5, I (Supp. 1983), and not its highest economic use as is required of nonqualifying land, RSA 75:1 (Supp. 1983). RSA 79-A:1 (Supp. 1983) provides:

"It is hereby declared to be in the public interest to encourage the preservation of open space in the state by providing a healthful and attractive outdoor environment for work and recreation of the state's citizens, by maintaining the character of the state's landscape, and by conserving the land, water, forest, and wildlife resources."

The legislature has thus determined that the preservation of New Hampshire's open spaces is in the public interest.

In the instant case, no evidence suggested that the Merrill and Gadd tracts posed a threat of harm to the community. The master concluded that the property was an appropriate subject for development through the use of the eminent domain power solely because he found it to be "blighted" within the meaning of RSA 205:2-b. Under this statute, "vacant or predominantly vacant land" "in which a redevelopment project is determined to be necessary" is blighted if it is not suitable for private development because either it would be "unduly costly to develop" due to the natural characteristics of the land, or "the ordinary operation of private enterprise" cannot remedy certain specified man-made characteristics of the property that result in its being used in "an unplanned, haphazard, or piecemeal manner." RSA 205:2-b.

Although property having these conditions may properly be classified as blighted because its continued nondevelopment is "detrimental . . . to the sound growth of the community," RSA 205:2-b, such property cannot be regarded as being blighted in the commonsense meaning of the word that the property poses a present threat to the community. *Cf.* RSA 205:1 (legislative finding that certain blighted areas "cause an increase in and spread of disease and crime"). The presence of an insect-breeding swamp or an unsightly, unsanitary slum, for example, may be blighting conditions whose eradication would directly benefit the public. In contrast, the blight on the Merrill and Gadd tracts consists solely in the unsuitability of the property for private development, and not from the existence of any harmful conditions. In this case, the benefit to the public will derive not from the eradication of blight, but only, if at all, from the eventual construction of the proposed industrial project.

■ The legislature has determined that the preservation of open spaces, such as the Merrill tract, is in the public interest. *See* RSA 79-A:1 (Supp. 1983). Absent the presence of a blighting condition which poses an actual harm to the community, such land may be

condemned only for uses that will directly benefit the public. There-
fore, because there are no conditions on the Merrill and Gadd tracts
that threaten the community with actual harm and because the pro-
posed industrial park will not directly benefit the public, we hold
that the public use requirement is not here satisfied.

█ We have held that where several tracts of land are con-
demned as one unit, we will uphold the taking of each parcel as long
as the taking of the whole is proper and the taking of the parcels is
"reasonably necessary" to the accomplishment of the purpose of the
condemnation. *Velishka v. Nashua,* 99 N.H. 161, 167, 106 A.2d 571,
575 (1954). This case, however, is easily distinguishable from
*Velishka,* wherein the property was found not to have been blighted,
but rather to have been an isolated parcel in a project area, the con-
ditions of which were causing an increase in and spread of disease
and crime, thereby constituting a menace to the health, safety, mor-
als and welfare of the residents of Nashua. In the present case, how-
ever, the plaintiffs' properties, apart from considerations of current
use assessment, are not greatly dissimilar to the remainder of the
properties in the project area. *See* "Eligibility Report" prepared by
Costello, Lomasney & deNapoli, Inc., for the Manchester Housing
Authority (April 1981).

The determination of blight in this particular study is arrived at
by virtue of a three-step analysis: first, a structural rating; second,
blighting influence; and third, land development limitations. Cer-
tain structural ratings also are analyzed as blighting influences.
The structural rating analysis has no applicability to the Merrill
tract because there are no buildings upon it. The report indicates as
well that there are no blighting influences with respect to Merrill,
and ultimately faults the property only on one count, namely severe
soil conditions and severe slopes. The Gadd property's structural
evaluation in the Costello report describes three buildings: a resi-
dence structure which is described as "good," a detached wood
frame garage which is described as "fair," and a livestock shelter
described as "poor." It was suggested by Mr. Gadd at oral argument
that the condition of the latter structure was not offensive to its
occupants, some chickens and two beef cattle. The presence of the
livestock structure and the incompatibility of the use of the premises
as a residential and agricultural use in an industrial zone were
determined in the report to be blighting influences. The report
further notes that the location of a stream on the property inhibited
its "proper" land development.

█ The "blighting conditions" of the Gadd/Merrill tracts as
determined in the Costello report are common to most of the other

twenty-four parcels involved in the project, and therein lies the distinction from *Velishka*. The power of eminent domain under RSA chapter 205 is not without limit.

We accordingly hold that the condemnation authority may not be exercised with respect to either the Merrill or Gadd tracts. Whether the remaining land may properly be condemned is not a question ripe for our consideration. We therefore reverse with respect to these tracts of land and remand with instructions to grant the petitions.

*Reversed and remanded.*

All concurred.