Cheshire
No. 93-717

CITY OF KEENE

v.

EUGENE ARMENTO & a.

December 19, 1994

230

*Gerald J. Carney*, city attorney, by brief and orally, for the plaintiff.

*Charles H. Morang*, of Concord, by brief and orally, for the defendants.

HORTON, J. The defendants appeal from a decree of the Superior Court (*Brennan*, J.) holding that RSA chapter 498-A, rather than RSA chapter 423, should be followed by the City of Keene for eminent domain proceedings involving an extraterritorial airport taking. We affirm in part and reverse in part.

The City of Keene (city) owns and operates the Dillant-Hopkins Airport, which lies almost entirely within the boundaries of the Town of Swanzey (town). Both the city and the town are municipalities in Cheshire County. All defendants are residents of the town and own property either abutting or in the immediate vicinity of the airport.

Pursuant to RSA 498-A:10 (1983), the city notified the defendants that it would be entering and surveying their property to locate, define, and determine the extent of obstructions to air navigation. The defendants refused entry, asserting that the city may do so only by following RSA 423:3 (1991), which requires the city to petition the county commissioners. The city then filed a petition for declaratory judgment and permanent injunction, contending that RSA chapter 498-A applies and requesting the superior court to enjoin the defendants from interfering with the city's right to enter and condemn the defendants' property. Because the trial court ruled that RSA chapter 498-A superseded RSA 423:3, it determined that the city was entitled to enter prior to condemnation pursuant to RSA 498-A:10, and enjoined the defendants from interfering with that right. On appeal, the defendants argue that RSA chapter 498-A does not supersede RSA 423:3.

The defendants argue that application of RSA chapter 498-A rather than RSA 423:3 would have two significant effects. First, they assert that RSA chapter 498-A does not require the condemnor to prove the necessity of a taking before a jurisdictionally competent body *prior* to the actual taking, thereby depriving the landowner of an opportunity to be heard prior to the taking. Second, they assert that if RSA 423:3 applies they would have the "owner's option" found in RSA 371:5-a, whereby the owner of land subject to a proposed partial taking could force the condemnor to condemn and take in fee the entire property. RSA 371:5-a (1984).

In 1929, the legislature enacted RSA chapter 423 which confers upon municipalities the right to own and operate municipal airports within or beyond their boundaries and the power of eminent domain to condemn land for such purposes. In addition to granting the power to condemn, RSA chapter 423 sets forth procedures for doing so. *See* RSA

423:2, :3 (1991). The procedures differ depending on whether the land subject to the taking is located in the municipality or outside the municipality. When the proposed taking involves land solely within the boundaries of the municipality, the statute mandates the same procedures used for the taking of land for highway purposes. RSA 423:2. When the proposed taking involves land outside of the municipality, the municipality must petition the county commissioners for a determination of necessity prior to any condemnation. RSA 423:3. The statute directs the county commissioners to follow the procedures used by the public utilities commission in public utility takings, as provided in RSA 371:1-13. RSA 423:3. RSA 423:1 grants the city the power to condemn land outside its boundaries for airport purposes, but the exercise of that power is conditioned upon a finding of necessity by the county commissioners. RSA 423:3.

In 1971, in an effort to simplify an eminent domain law characterized as "a confusing, antiquated and often ambiguous collection of statutes," Manias, *Eminent Domain Procedure and the Commission System*, 14 N.H.B.J. 61, 62 (1972), the legislature enacted RSA chapter 498-A, the eminent domain procedure act. The act's stated purpose is to "provide a complete and exclusive *procedure* to govern all condemnations of property for public purposes and the assessment of damages therefor." RSA 498-A:1 (1983) (emphasis added). The act repealed "[a]ll acts or portions of acts inconsistent" with it but did not explicitly repeal any individual statute. RSA 498-A:29 (1983). The legislature later amended the act to exempt public utilities and "municipalities acting under RSA 38" from its application, so that condemnations by public utilities and by municipalities acting under RSA chapter 38 are the only condemnation proceedings explicitly exempt from RSA chapter 498-A. RSA 498-A:3 (Supp. 1993); Laws 1981, 3:2; Laws 1990, 70:3.

RSA chapter 498-A is a comprehensive eminent domain *procedure* act, not a comprehensive eminent domain enabling statute. RSA 498-A:1 (1983). Eminent domain statutes enacted before RSA chapter 498-A contain both a grant of power and the procedure to be followed when exercising that power. We must look to statutes other than RSA chapter 498-A to find the enabling authority for all takings. We must look to those same statutes for the proper procedures in situations where RSA chapter 498-A does not exclusively control procedure, particularly where additional procedures are necessary to establish the power to condemn or preserve the condemnee's right to challenge necessity. *See* RSA 498-A:1. The question in this case is which elements of RSA 423:3 and RSA chapter 498-A provide the proper procedure for the exercise of the grant of power found in RSA 423:3.

■■    Although the stated intent of RSA chapter 498-A is to unify and govern all eminent domain procedures, RSA 498-A:1 contains two significant limitations. RSA chapter 498-A "is not intended to enlarge or diminish the power of condemnation given by law to any condemnor and it is not intended to enlarge or diminish the rights given by law to any condemnee to challenge the necessity for any condemnation." RSA 498-A:1. The power of condemnation for extraterritorial airport takings is granted under RSA 423:3. The grant is conditioned on a determination of necessity by the county commissioners having jurisdiction over the subject territory. Under the procedures of RSA chapter 498-A, however, title passes, and the condemnor gains the right to enter and take possession merely by filing a declaration of taking and depositing an estimated amount of just compensation. RSA 498-A:5; :11 (1983). The only issue for the board of tax and land appeals to determine is the appropriate amount of just compensation. RSA 498-A:24. This procedure is appropriate for use by a condemning authority acting within its territorial jurisdiction where the determination of necessity is made by the condemning authority, subject to hearing and challenge. It is not appropriate for an extraterritorial taking where the condemning authority acts outside its territorial jurisdiction and the legislature has not conferred extraterritorial jurisdiction. Removing the requirement that the municipality petition the county commissioners for a determination of necessity prior to the taking would deprive the condemnee of the right to have necessity determined by a jurisdictionally competent body designated by the legislature. This would enlarge the condemnation power of the condemnor and diminish the rights of the condemnee to challenge the necessity of the taking in contravention of the stated limitations of the act. RSA 498-A:1.

■    In *Public Service Co. of New Hampshire v. Lovejoy Granite Co.*, before RSA 498-A:3 was amended to exclude from its application takings by public utilities, we held that RSA chapter 498-A did not repeal RSA chapter 371 for such takings. *Public Serv. Co. v. Lovejoy Granite Co.*, 114 N.H. 630, 633–34, 325 A.2d 785, 787 (1974). In doing so, we stated in dictum that if RSA chapter 498-A did repeal RSA chapter 371 the board of tax and land appeals (then called the eminent domain commission) rather than the public utilities commission would determine just compensation. *Id.* at 633, 325 A.2d at 787. The public utilities commission would still have to conduct a hearing under RSA chapter 371 to determine necessity before any taking could occur and before the board of tax and land appeals could consider the issue of damages. *Id.* Neither the board of tax and land appeals nor the public utility seeking to condemn the land have the power to determine necessity. Likewise in the present case, the legislature has not given

the city the power to determine the necessity of a taking outside its municipal boundaries. That determination has been left to a governmental body with jurisdiction over the land sought to be condemned, the county commissioners. *See* RSA 423:3.

■ The city argues that certain procedures, which we have previously read into other condemnation statutes in order to cure constitutional defects, would provide the defendants sufficient opportunity to be heard and, therefore, their right to challenge necessity would not be diminished. The city contends that *Merrill v. City of Manchester*, 124 N.H. 8, 466 A.2d 923 (1983), and *Gazzolla v. Clements*, 120 N.H. 25, 411 A.2d 147 (1980), require a pre-taking public hearing to determine necessity, and *V.S.H. Realty, Inc. v. City of Manchester*, 123 N.H. 505, 464 A.2d 1111 (1983), requires a *de novo* review of that hearing in superior court. Even if we assume that these judicially crafted procedures apply in this case, they are insufficient to preserve the defendants' statutory right to challenge the necessity of the taking.

In *Merrill* and *Gazzolla*, we held that the equal protection component of the New Hampshire Constitution required a hearing to determine the necessity of a proposed taking before the taking occurred because the legislature provided property owners a pre-taking hearing in condemnations for some purposes but not for others. *Merrill*, 124 N.H. at 14, 466 A.2d at 928; *Gazzolla*, 120 N.H. at 29, 411 A.2d at 152. The city argues that a hearing before the Keene City Council satisfies this constitutional requirement and adequately preserves the defendants' right to challenge necessity. This hearing is not adequate because the legislature has mandated that the county commissioners, a jurisdictionally competent body, determine the necessity of an extraterritorial airport taking. *See* RSA 423:3. A finding of necessity by the county commissioners is a statutorily mandated condition precedent to the exercise of the city's power to condemn land beyond its municipal boundaries. RSA chapter 498-A has not altered this. Because the statutory scheme does not permit the condemning authority to satisfy this condition in any manner other than by a hearing before the county commissioners, the Keene City Council's determination of necessity is insufficient. *See* RSA 423:3. For this same reason a *de novo* review of that decision in superior court would not satisfy the statutory condition precedent to the city's exercise of its power to condemn extraterritorial property.

Based on the above considerations, we hold that the legislature did not intend to repeal RSA 423:3 to the extent that it requires a pre-taking determination of necessity by the county commissioners in the case of extraterritorial airport takings.

234

■ We now must determine whether and when the city may enter the defendants' property pursuant to RSA 498-A:10. As stated above, the purpose of RSA chapter 498-A is to provide a complete and exclusive procedure for condemnations. RSA 498-A:1. RSA 498-A:10 permits the condemnor to enter any land or improvement that it has the power to condemn for preliminary inspection purposes. Power to condemn is a condition precedent to entry. The legislature has given the city the power to condemn extraterritorial property for airport purposes in RSA 423:3. Even though the ultimate exercise of this power is conditioned on a finding of necessity by the county commissioners, the power granted by the legislature in RSA 423:3 is sufficient to satisfy the condition precedent necessary for entry pursuant to RSA 498-A:10.

The right of entry found in RSA 498-A:10 is virtually the same right of entry found in RSA 423:3, which incorporates RSA 371:2-a (1984), except that RSA 498-A:10 permits entry for stated limited inspection purposes *prior* to filing a declaration of taking, and RSA 371:2-a permits such an entry only *after* a filing for a determination of necessity. Because the right of entry under RSA 371:2-a is conditioned not on a finding of necessity, but merely on the filing of a petition under RSA chapter 371, entry pursuant to RSA 498-A:10 does not enlarge or diminish the power of condemnation given to the city and does not enlarge or diminish the rights of the defendants to challenge the necessity of any condemnation. The difference between the statutes is purely procedural. Because RSA 498-A:29 repeals all acts inconsistent with RSA chapter 498-A, RSA 498-A:10 supersedes and repeals RSA 371:2-a as applied to extraterritorial airport takings. Thus, the city may enter the defendants' land prior to filing a declaration of taking pursuant to RSA 498-A:10.

Except for entry pursuant to RSA 498-A:10, the city may not proceed under RSA chapter 498-A until the county commissioners determine that there is a necessity for the proposed extraterritorial airport taking. Once the county commissioners find necessity, the procedures of RSA chapter 498-A govern. The jurisdiction of the county commissioners is limited to determining whether there is necessity for the proposed taking; the board of tax and land appeals must determine just compensation. RSA 498-A:24 (1983).

The defendants next argue that applying RSA 423:3, which incorporates parts of RSA chapter 371, rather than applying RSA chapter 498-A, would permit landowners subject to a proposed partial taking to force the city to take the entire property in fee, at the landowner's option, pursuant to RSA 371:5-a. RSA 371:5-a is a substantive right given to owners of land condemned for use by public utilities. RSA 423:3 merely states that the *procedure* for taking land for

airport use should be the same as in takings by public utilities; it conveys no substantive rights such as the "owner's option." Thus, regardless of whether RSA 423:3 applies, the defendants have no statutory right to exercise the "owner's option."

The City of Keene may enter the defendant's land for the purposes, and subject to the procedures and limitations, set forth in RSA 498-A:10, prior to filing a petition under RSA 423:3. Upon determination of necessity by the county commissioners, the city may institute the taking under RSA chapter 498-A by filing a declaration of taking. All procedures of the taking after determination of necessity shall be governed by RSA chapter 498-A.

*Affirmed in part; reversed in part.*

All concurred.