Cheshire County Commissioners
No. 95-867

## APPEAL OF CITY OF KEENE

(Cheshire County Commissioners)

April 29, 1997

*Gerald J. Carney*, city attorney, of Keene, by brief and orally, for the petitioner.

*Bradley, Burnett & Kinyon, PA*, of Keene (*Beth R. Fernald* on the brief and orally), for the Town of Swanzey.

*Jeffrey R. Howard*, attorney general (*Michael J. Walls*, senior assistant attorney general, on the brief and orally), for the New Hampshire Department of Transportation.

*Charles H. Morang*, of Concord, by brief and orally, for the Swanzey Action Alliance, Eugene and Judith Armento, John E. Farwell, Edwin E. Aron, and Arnold Stymest.

*Thomas R. Clark*, city solicitor, and *Kevin St. Onge*, staff attorney, by brief, for the City of Manchester, as *amicus curiae*.

The other respondents filed no brief.

BRODERICK, J. The petitioner, the City of Keene (city), appeals the Cheshire County Commissioners' (commissioners) denial of the city's request for a determination of public necessity, a statutory predicate to the city initiating eminent domain proceedings for an extraterritorial airport taking. *See* RSA 423:3 (1991). We vacate and remand.

The city owns and operates the Dillant-Hopkins Airport (airport), which lies almost entirely within the boundaries of the Town of Swanzey (town). Pursuant to this court's ruling in *City of Keene v. Armento*, 139 N.H. 228, 651 A.2d 924 (1994), the city entered and surveyed property in the town either abutting or in the immediate vicinity of the airport to locate, define, and determine the extent of obstructions to air navigation. *See id.* at 235, 651 A.2d at 928. After completing this work, the city in July 1995 filed petitions with the commissioners requesting that they make a determination of public necessity for the city's proposed acquisition of certain land rights in the town for air navigational easements. *See id.* at 234, 651 A.2d at 927.

In August 1995, prior to the commencement of hearings before the commissioners, the city challenged the qualifications of the chair, Gregory Martin. The city asserted that the former representation by Martin's law partner of two property owners in regard to the city's actions required his recusal from the proceedings. The commissioners determined that Martin need not recuse himself because he had not personally represented these property owners and was not aware they were his partner's clients until he learned the city would file the petitions at issue, at which time his law partner referred them to other counsel for representation in this matter.

Following hearings and a site review in October 1995, the commissioners unanimously voted to deny the city's request for a determination of public necessity. The commissioners subsequently denied the city's request for rehearing. Because Martin's law partner was again representing the same two property owners at the time the city requested rehearing, Martin abstained from that decision.

The city now argues that because the commissioners' review of a petition to determine public necessity under RSA 423:3 is quasi-judicial in nature, Martin's failure to recuse himself from the proceedings voids the commissioners' ruling. In the alternative, the

city contends that the commissioners erred in balancing the public benefits of the proposed taking against the burdens and social costs in determining public necessity, rather than confining their review to whether the evidence submitted established the existence of obstructions to air navigation. Finally, even assuming the commissioners correctly used a balancing test in making their determination, the city maintains that their ruling was unreasonable.

As an initial matter, we address the town's contention that this court is without jurisdiction in this case. Following the denial of its request for rehearing, the city petitioned this court for a writ of certiorari to review the commissioners' determination. We treated the petition as an appeal under RSA chapter 541, which governs appeals from decisions of the public utilities commission and other administrative agencies, and accepted the case. The town moved to dismiss the case, arguing that the city's petition is legally insufficient to constitute an appeal under RSA chapter 541 because that statute's procedures do not apply to this decision. For purposes of this case, we need not decide whether the correct avenue for appellate review of a ruling by the county commissioners under RSA 423:3 is a petition for writ of certiorari or an appeal pursuant to RSA chapter 541. Whether viewed as a petition or an appeal, the case is timely before us, *see Petition of Ellis*, 138 N.H. 159, 160-61, 636 A.2d 62, 63 (1993), and the "only slightly" differing standards of review would not affect the outcome in this instance, *Appeal of Dell*, 140 N.H. 484, 487-88, 668 A.2d 1024, 1029 (1995). We therefore deny the town's motion to dismiss the appeal.

■ We turn next to the city's argument that Martin's failure to recuse himself voids the commissioners' ruling. The city contends, as it did before the commissioners themselves, that because of the quasi-judicial nature of the proceedings to determine public necessity, the former representation by Martin's law partner of two town residents whose property the city sought to take was cause for Martin's disqualification. The town, relying upon this court's decision in *Appeal of Cheney*, 130 N.H. 589, 551 A.2d 164 (1988), responds that the commissioners' determination of public necessity was not a quasi-judicial act.

Whether Martin's failure to recuse himself from the proceedings undermines the validity of the commissioners' ruling depends upon the characterization of the commissioners' task. *See Winslow v. Holderness Planning Board*, 125 N.H. 262, 265-66, 480 A.2d 114, 115 (1984). If their determination is best termed judicial or quasi-judicial, as opposed to administrative or legislative, we apply a stricter rule of fairness "both in deciding whether to disqualify an

official, and in determining the effect of such a disqualification upon a decision." *Id.* at 266, 480 A.2d at 115 (citation omitted). A judicial or quasi-judicial act may be voided because of a conflict of interest, but an administrative or legislative act "need not be invalidated if the conflicting interest did not determine the outcome." *Michael v. City of Rochester*, 119 N.H. 734, 736, 407 A.2d 819, 821 (1979).

An act is judicial in nature if officials "are bound to notify, and hear the parties, and can only decide after weighing and considering such evidence and arguments, as the parties choose to lay before them." *Sanborn v. Fellows*, 22 N.H. 473, 489 (1851). We have recognized that a judicial function is involved when, for example, "an agency decides a dispute between two or more parties with competing interests," *Michael*, 119 N.H. at 736, 407 A.2d at 821, or a planning board determines whether a town's size and frontage requirements should be waived in a particular case. *See Winslow*, 125 N.H. at 267, 480 A.2d at 116.

Legislative and administrative action, by contrast, is marked by "its high visibility and widely felt impact," from which an aggrieved person can find an "appropriate remedy . . . at the polls." *Id.* at 266, 480 A.2d at 116 (quotation omitted). Thus a municipality's actual decision to acquire extraterritorial land in connection with its management of an airport — such as the city made in this case — is an act legislative in nature, to which the courts accord great deference. *See State v. 4.7 Acres of Land*, 95 N.H. 291, 294, 62 A.2d 732, 734 (1948). It does not inevitably follow, however, that the commissioners' assessment of the public necessity for such acquisition of extraterritorial land should also be characterized as a legislative act.

When a municipality petitions the county commissioners for a determination of public necessity for an extraterritorial airport taking, RSA 423:3 dictates that "the procedure followed by the commissioners as respects notice, assessment and payment of damages, entry and appeal shall, so far as applicable, be the same as that prescribed for the public utilities commission in the case of taking land by a public utility as provided in RSA 371:1-13, inclusive." RSA chapter 371, in turn, provides that "[t]he commission shall, upon notice to all parties in interest, hear and determine the necessity for the right prayed for and the compensation to be paid for such right, and shall render judgment accordingly." RSA 371:4 (1995). These statutory directives require the commissioners to notify and hear interested parties prior to making a public necessity determination. Such a procedure contemplates a determination based upon an evaluation of evidence and arguments pre-

sented by parties with competing interests — in short, a ruling more adjudicative than legislative in nature. *See Winslow*, 125 N.H. at 267, 480 A.2d at 116; *Sanborn*, 22 N.H. at 488-89.

Our opinion in *Appeal of Cheney* is not to the contrary. *Appeal of Cheney* concerned a city's taking of commercial property to create a parking lot. *Cheney*, 130 N.H. at 590, 551 A.2d at 164. Before the board of tax and land appeals, the plaintiff argued that a city councilor should have been disqualified due to a conflict of interest. *Id.* at 594, 551 A.2d at 167. The board rejected this claim, ruling that the plaintiff had raised no such objection at the hearings before the city council. *Id.* We affirmed the board's ruling, noting that disqualification would have rendered the city council's action voidable, only if its decision to exercise the power of eminent domain was quasi-judicial, an issue we explicitly declined to reach. *See id.* at 594-95, 551 A.2d at 167.

Because the commissioners' public necessity determination is quasi-judicial in nature, stricter rules of fairness apply to its proceedings than to those involving no judicial function. *See Winslow*, 125 N.H. at 267, 480 A.2d at 116. We begin with the question of Martin's disqualification and the State constitutional mandate that all judges be "as impartial as the lot of humanity will admit." N.H. CONST. pt. I, art. 35. "This applies similarly to members of boards acting in a quasi-judicial capacity." *Winslow*, 125 N.H. at 267, 480 A.2d at 116. A conflict of interest exists if an official has a direct interest in the outcome of a proceeding, *see State ex rel. Thomson v. State Bd. of Parole*, 115 N.H. 414, 422, 342 A.2d 634, 639 (1975), or any "conne[ct]ion with the parties in interest, as would be likely, improperly, to influence [his or her] judgment," *N.H. Milk Dealers' Ass'n v. Milk Control Board*, 107 N.H. 335, 338, 222 A.2d 194, 198 (1966) (quotation omitted). "Whether a direct interest or a connection requires disqualification depends upon the particular circumstances of the case." *Appeal of Hurst*, 139 N.H. 702, 704, 660 A.2d 1143, 1145 (1995).

The city argues that Martin's connection to two town residents whose property the city sought to take required him to recuse himself from the proceedings. A lawyer acting in a judicial capacity "must exercise particular care to keep the conduct of his law practice separate from his judicial functions so that improprieties and the appearance of impropriety may be avoided." *Plaistow Bank & Trust Co. v. Webster*, 121 N.H. 751, 754, 433 A.2d 1332, 1334 (1981). In this instance, there is no dispute that one of Martin's two law partners actively represented these property owners in regard to the city's actions until it became apparent that the city would file

the petitions at issue. Each lawyer in a firm is presumed to share the loyalty owed a particular client, *see* N.H. R. PROF. CONDUCT 1.10 ABA model code comments, a loyalty which endures even after the firm ceases to represent that client, *cf. Sullivan County Reg. Refuse Disposal Dist. v. Town of Acworth*, 141 N.H. 479, 484, 686 A.2d 755, 758 (1996) (interpreting N.H. R. PROF. CONDUCT 1.9). Accordingly, Martin's connection to these parties — former clients of his law partner in this very matter — "was such that it would be likely to influence his opinion and thus necessitated his removal from the panel." *Appeal of Hurst*, 139 N.H. at 704, 660 A.2d at 1145 (quotation omitted); *cf. Plaistow Bank & Trust Co.*, 121 N.H. at 754, 433 A.2d at 1334 (noting that attorneys associated with part-time judges may not appear before them).

It remains to determine the effect of Martin's disqualification on the commissioners' ruling. In *Rollins v. Connor*, 74 N.H. 456, 69 A. 777 (1908), we stated that "judicial action by a tribunal one of whose members is disqualified to act is voidable if the disqualified member participates therein, without reference to the fact whether the result is produced by his vote." *Id.* at 459, 69 A. at 778. This rule flows from the inherent difficulty in estimating the influence one member of a tribunal may have on his or her associates. *Winslow*, 125 N.H. at 268, 480 A.2d at 117. In view of both the significant property interests involved and the State constitutional mandate of judicial impartiality, we see no reason not to apply this rule to the commissioners' public necessity determination. *See id.* at 268, 480 A.2d at 117 (applying *Rollins* rule to planning board determination). We therefore void the commissioners' ruling and remand.

To provide some guidance on remand, we address the city's assertion that the commissioners erred in determining public necessity by balancing the public benefits of the proposed taking against the burdens and social costs. A balancing test is appropriate in this case. Public necessity is synonymous with public use — in other words, a public necessity exists if the city demonstrates a public purpose for the taking and that, on balance, "a probable net benefit to the public [will result] if [the] taking occurs for the intended purpose." *Appeal of Cheney*, 130 N.H. at 595, 551 A.2d at 168; *see also Merrill v. City of Manchester*, 127 N.H. 234, 236-37, 499 A.2d 216, 217 (1985). "In establishing the reason for a taking absolute necessity is not required; rather, only reasonable necessity need be shown." *Town of Rumney v. Banel*, 118 N.H. 786, 788, 394 A.2d 323, 324 (1978) (quotations and brackets omitted). While legislative findings bearing on the public purpose of a proposed taking "have no magical quality to make valid that which is invalid,"

*Velishka v. Nashua*, 99 N.H. 161, 165, 106 A.2d 571, 573 (1954), the public policy considerations expressed by the General Court in relation to airport safety, *see* RSA 424:2 (1991), are entitled to weight in the commissioners' public necessity determination.

*Vacated and remanded.*

All concurred.