Original
No. 96-589

## PETITION OF JAMES J. BIANCO, JR. & a.
### (Belknap County Commissioners)

October 8, 1998

*Bianco Professional Association*, of Concord (*Kevin E. Buchholz* on the brief and orally), for the petitioners.

*Burke & Eisner, P.A.*, of Gilford (*James L. Burke* on the brief and orally), for the respondent, City of Laconia.

HORTON, J. The petitioners, James J. Bianco, Jr. and Karen N. Bianco, petition this court for a writ of certiorari. They seek review of a decision of the Belknap County Board of Commissioners

(commissioners) that authorized the taking of an avigation easement over the petitioners' property. *See* RSA 423:3 (1991). We vacate and remand for further proceedings.

The City of Laconia (city) owns the Laconia Airport located in the Town of Gilford (town). The petitioners' property, also located in the town, is adjacent to the airport. The city seeks to install an instrument landing system (ILS) at the airport and is attempting to obtain Federal Aviation Administration (FAA) funding for the project. FAA funding, although not guaranteed, was conditioned upon a clear approach surface to the runway. To clear the approach surface, the city and the Laconia Airport Authority (LAA) have attempted to acquire voluntary avigation easements over tracts of land surrounding the airport. The petitioners' property is one of several properties over which the city and LAA seek easements.

Under the proposed easement, the city would have "the right to prevent the erection of or growth upon the [petitioners'] property any building, structure, tree or other object extending into the airspace above the [described] imaginary planes." The easement would include the right to trim back any intruding trees to prevent obstructions to the airport runway approach path. According to a witness for the city, the petitioners' tallest tree intrudes into the imaginary plane by approximately thirty feet.

The petitioners objected to the proposed easement and did not grant an easement to the city. As a result, the city petitioned the commissioners, pursuant to RSA 423:3, to determine the necessity for an avigation easement on the petitioners' property. Attached to the petition was a copy of the proposed easement on the petitioners' property. On April 24, 1996, the commissioners held a hearing for a determination of public necessity. The petitioners received actual notice of the hearing; the only other notices were postings at the Belknap County Superior Court, the Belknap County Nursing Facility, and a notice of public hearing published in the *Laconia Evening Citizen*, the local newspaper.

At the hearing, both the city and the petitioners called witnesses and submitted written documents. At the close of the hearing, the commissioners allowed the parties to submit legal memoranda and also requested that the city determine whether the proposed easement could be restricted in scope. In response, the city submitted a revised easement proposal.

On May 30, 1996, the commissioners found, based upon consideration of all of the evidence including the revised easement, that "the public's interest and safety require[d] the taking of the easement rights" on the petitioners' property, and authorized the city to

proceed with the taking. The petitioners' motion for rehearing was denied, and this petition for a writ of certiorari followed.

The petitioners challenge the commissioners' decision, claiming the commissioners erred by: (1) conducting proceedings not ripe for adjudication because all parties affected by the easements were not given notice of the proceedings; (2) weighing the public necessity of the taking in isolation, without considering the effects on all tracts over which the city sought easements; (3) failing to rule on the petitioners' specific requests for findings of fact and rulings of law; (4) failing to consider less burdensome alternatives than the easement at issue; (5) granting overly broad easements in light of the stated public necessity for the easements and the uncertainty of FAA funding; (6) considering economic factors alone as sufficient to justify a finding of public necessity; (7) considering anecdotal evidence to support a finding of public necessity; and (8) allowing the city, but not the petitioners, to submit additional evidence after the close of the hearing.

██ "Certiorari review is limited to whether the [board of commissioners] acted illegally with respect to jurisdiction, authority or observance of the law, whereby it arrived at a conclusion which could not legally or reasonably be made, or abused its discretion or acted arbitrarily, unreasonably, or capriciously." *In re Ryan G.*, 142 N.H. 643, 645, 707 A.2d 134, 136 (1998) (quotation and ellipses omitted). If the finding of public necessity for the taking of the petitioners' property "rests on legitimate grounds or is not so lacking in reason that it constitutes an abuse of discretion, we will not tamper with it." *Id.* (quotation omitted).

As the commissioners correctly contend, public policy encourages voluntary acquisitions from landowners before conducting involuntary condemnation proceedings. *See* RSA 371:1 (1995); RSA 423:3; RSA 498-A:4, I(a) (1997). If the parties do not agree, as in the present case, RSA 423:3 governs the process by which an extraterritorial taking may occur. It provides:

> Whenever a town finds it necessary to acquire land for the purposes hereof beyond its boundaries and is unable to acquire it for a reasonable price by purchase or lease, the town may institute eminent domain proceedings by petition to the county commissioners, and the procedure followed by the commissioners as respects notice, assessment and payment of damages, entry and appeal shall, so far as applicable, be the same as that prescribed for the public

utilities commission in the case of taking land by a public utility as provided in RSA 371:1-13, inclusive.

As required by statute, we next examine RSA 371:1-:13, which provides the framework for a public utility to acquire property or rights. Under RSA 371:1, if the taking authority "cannot agree with the *owners of such land . . .* [it] may petition . . . for such rights and easements or for permission to take such lands or rights as may be needed for said purposes." (Emphasis added.) Provided that "notice [is given] to *all parties* in interest," the commissioners shall "hear and determine the necessity" for the desired taking. RSA 371:4 (1995) (amended 1996) (emphasis added).

 To determine whether a proposed condemnation is a public necessity, the taking authority must consider whether there is a public purpose for the taking and whether the taking will result in public benefit. *Appeal of City of Keene*, 141 N.H. 797, 802, 693 A.2d 412, 416 (1997). Public benefit is measured by considering "the benefits of the proposed project and the benefits of the eradication of any harmful characteristics of the property in its present form, reduced by the social costs of the loss of the property in its present form." *Merrill v. City of Manchester*, 127 N.H. 234, 237, 499 A.2d 216, 217 (1985). "In establishing the reason for a taking absolute necessity is not required; rather, only reasonable necessity need be shown." *City of Keene*, 141 N.H. at 802, 693 A.2d at 416 (quotation omitted). "[P]ublic policy considerations expressed by the General Court in relation to airport safety, *see* RSA 424:2 (1991), are entitled to weight in the commissioners' public necessity determination." *City of Keene*, 141 N.H. at 802-03, 693 A.2d at 416.

We previously addressed the proper focus when considering public purposes and social costs of a proposed taking.

> When more than one parcel of land is included in a property acquisition subject to the eminent domain power, the validity of the taking of any one parcel is not to be judged in isolation. Rather, the question is whether the taking of the [petitioners'] property can be viewed as one element of a coherent plan of property acquisition that is justifiable as a whole.

*Appeal of Cheney*, 130 N.H. 589, 597, 551 A.2d 164, 169 (1988) (citation omitted). The finding of public necessity cannot be determined by comparing all public benefits of a proposed taking against each affected property owner individually. *Cf.Velishka v. Nashua*, 99 N.H. 161, 167, 106 A.2d 571, 574-75 (1954).

■■ We recognize "that a finding of public necessity, or a lack of such necessity, is discretionary and we are therefore hesitant to disturb such findings." *Jackson v. Ray*, 126 N.H. 759, 762, 497 A.2d 1191, 1194 (1985). A finding premised on an improper balancing, however, cannot be upheld. In conducting the appropriate balancing test to determine public necessity, the taking authority must consider all public benefits of the proposed taking against all burdens and social costs suffered by every affected property owner. *See City of Keene*, 141 N.H. at 802, 693 A.2d at 416. Only when each side is properly weighed can a proper balancing occur. *See id.* In this case, the commissioners' decision considered the impact of the proposed taking only as to the petitioners' property rather than as to all affected property. This was error.

To provide guidance on remand, we address the petitioners' contention that the commissioners erred by failing to make specific findings of facts and rulings of law. Instead, the commissioners drafted an eight-page narrative ruling, including several specific findings. The petitioners concede that the commissioners do not have to respond to each and every request for findings of fact put forth by a party. The commissioners, however, must respond to those requests for findings that enable the court to engage in meaningful judicial review. *See Appeal of Psychiatric Institutes of America*, 132 N.H. 177, 184, 564 A.2d 818, 822 (1989). A narrative ruling may provide this court with sufficient information to engage in such review. Rather than make specific rulings, the commissioners may draft a narrative decision, provided that the ruling incorporates the analysis necessary to support the decision.

We need not address the petitioners' remaining claims of error. We vacate the commissioners' decision and remand for further proceedings consistent with this opinion.

*Vacated and remanded.*

All concurred.