NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Coos
No. 2019-0460

THE STATE OF NEW HAMPSHIRE

v.

SHANE M. BEATTIE & a.

Argued: May 13, 2020
Opinion Issued: November 19, 2020

Gordon J. MacDonald, attorney general (Allison B. Greenstein, assistant attorney general, on the brief and orally), for the State.

Waystack Frizzell, Trial Lawyers, of Colebrook (Jonathan S. Frizzell and Sandra L. Cabrera on the brief, and Mr. Frizzell orally), for the defendants.

BASSETT, J. The defendants, Shane and Trina Beattie, appeal an order of the Superior Court (MacLeod, J.) dismissing, with prejudice, their preliminary objection challenging the State's taking of 0.93 acres of their land in fee simple, as well as permanent and temporary easements. The Beatties argue that the trial court erred when, in dismissing their preliminary objection, which challenged the necessity and net-public benefit of the taking, the trial court applied the fraud or gross mistake standard of review set forth in RSA chapter 230 rather than a de novo standard pursuant to RSA chapter 498-A. See RSA 230:14, :19 (2009 & Supp. 2019); RSA 498-A:1, :9-b (2010). The State counters that the trial court did not err because RSA chapter 230, not

RSA chapter 498-A, governs the outcome of this case.  We agree with the Beatties, and reverse and remand.

The pertinent facts are as follows.  In November 2013, the Governor and Executive Council appointed a three-person commission to determine whether there was occasion for the laying out or alteration of New Hampshire Route 2 in Lancaster.  See RSA 230:14.  The proposed project contemplated the replacement of the existing bridge spanning the Connecticut River between Lancaster and Guildhall, Vermont.  In February 2014, the New Hampshire Department of Transportation sent a Notice of Hearing to the Beatties because the proposed project might require acquisition of their property, or it might be in close proximity to their property.  The notice informed the Beatties that the commission would hold a public hearing on the proposed project in March 2014.  The Beatties did not attend the hearing.  In April 2014, the commission issued its report determining that there was occasion for the project.

In July 2018, the State offered to purchase those portions of the Beatties' land that it considered necessary for completion of the project.  The Beatties declined the State's offer, and, in September 2018, the State filed a declaration of taking with the New Hampshire Board of Tax and Land Appeals (BTLA).  The declaration identified a 0.93 acre portion of the Beatties' land that the State intended to take in fee simple, an additional 9,506 square foot area over which the State intended to take a permanent easement to accommodate the slopes and embankments necessary to support the highway, and an additional 8,543 square foot area over which the State intended to take a temporary easement for use while constructing the project.

In response to the State's declaration of taking, the Beatties filed an answer and preliminary objection with the BTLA.  See RSA 498-A:9-a, I (2010) (providing that "any condemnee may file a motion in the office of the board raising preliminary objections to [a] declaration of taking").  The Beatties challenged the necessity and net-public benefit of the taking, and, accordingly, requested that their preliminary objection be transferred to the superior court. See RSA 498-A:9-b, I.  Following the transfer, in January 2019, the State filed a response and a motion to dismiss the Beatties' preliminary objection.  Citing RSA 230:14 and :19, the State argued that, because the Beatties had failed to allege fraud or gross mistake on the part of the commission, their preliminary objection must be dismissed as a matter of law.

In its July 2019 order granting the State's motion to dismiss, the trial court ruled that, although RSA chapter 498-A is the comprehensive eminent domain procedure act, courts must look to the enabling statute — in this case, RSA chapter 230 — for the proper standard of review.  Accordingly, the trial court analyzed RSA 230:14 and :19, and determined that, in their preliminary objection, the Beatties were required to allege fraud or gross mistake on the

part of the commission. Because the Beatties did not do so, the trial court found that they had "failed to state a claim upon which relief may be granted," and concluded that "their preliminary objection must therefore be dismissed." This appeal followed.

"In reviewing the trial court's grant of a motion to dismiss, our standard of review is whether the allegations in the [non-moving party's] pleadings are reasonably susceptible of a construction that would permit recovery." Plaisted v. LaBrie, 165 N.H. 194, 195 (2013). "We assume that the [non-moving party's] pleadings are true and construe all reasonable inferences in the light most favorable to [them]." Id. "However, we need not assume the truth of statements in the [non-moving party's] pleadings that are merely conclusions of law." Cluff-Landry v. Roman Catholic Bishop of Manchester, 169 N.H. 670, 673 (2017). "We then engage in a threshold inquiry that tests the facts in the petition against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss." Plaisted, 165 N.H. at 195. "When, as here, the parties' arguments require us to engage in statutory interpretation, our review is de novo." New England Backflow v. Gagne, 172 N.H. 655, 661 (2019).

"In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." Petition of Carrier, 165 N.H. 719, 721 (2013). "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. "The legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of a statute should be given effect." Garand v. Town of Exeter, 159 N.H. 136, 141 (2009) (quotation omitted). "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." Carrier, 165 N.H. at 721. "Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id. "This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." Id.

We begin our analysis by setting forth the relevant statutory framework. RSA 230:14, I, provides, in pertinent part, that the Governor may "appoint a commission of 3 persons who, upon hearing, shall determine whether there is occasion for the laying out or alteration of [certain highways] . . . as proposed by the commissioner of transportation." RSA 230:14, I. "If such a determination is made by the commission, the commissioner may purchase land or other property that is reasonably necessary for the construction, reconstruction, or alteration and shall lay out the remainder of such highway

3

or alteration." Id. "Any such land or property which cannot be acquired by agreement with the owner or owners thereof may be acquired in accordance with RSA 498-A and all issues that are appealed relating to necessity, public use, and net public benefit shall be determined in accordance with RSA 230:19." Id. In turn, RSA 230:19 provides, in pertinent part, that "there shall be no appeal from [the commission's] findings on the matter of occasion for the laying out of the highway or alteration thereof in the absence of fraud or gross mistake." RSA 230:19.

RSA chapter 498-A provides, in pertinent part, that "any condemnee may file a motion in the office of the board raising preliminary objections to [a] declaration of taking." RSA 498-A:9-a, I. Under the statute, a "[p]reliminary objection shall be limited to and shall be the exclusive method of challenging," among other things, "[t]he necessity, public use, and net-public benefit of the taking." RSA 498-A:9-a, I. "If a condemnee files a preliminary objection under RSA 498-A:9-a, I(c) concerning necessity, public use, or net-public benefit, the board shall transfer that preliminary objection to the superior court . . . ." RSA 498-A:9-b, I. "Upon receipt of the transfer from the board, the superior court shall require a response from the condemnor and may conduct an evidentiary hearing before it rules on the preliminary objection." RSA 498-A:9-b, II. The stated purpose of RSA chapter 498-A is "to provide a complete and exclusive procedure to govern all condemnations of property for public uses including the review of necessity, public uses, and net-public benefit, and the assessment of damages therefor." RSA 498-A:1, I. "It is not intended to enlarge or diminish the power of condemnation given by law to any condemnor and it is not intended to enlarge or diminish the rights given by law to any condemnee to challenge the necessity, public uses, and net-public benefit for any condemnation." Id. The statute expressly repeals all inconsistent acts or portions of acts. RSA 498-A:29 (2010).

On appeal, the Beatties argue that the trial court erred by applying the fraud or gross mistake standard of review set forth in RSA chapter 230 because RSA chapter 498-A "supersedes" RSA chapter 230 on procedural matters, and, therefore, exclusively governs such matters. See RSA 498-A:1, :29. They contend that a standard of review is a matter of procedural law, and that, under RSA chapter 498-A, the applicable standard is de novo. The State counters that "in order to successfully state a claim under RSA 498-A:9-a, I(c), the Beatties must allege that the [c]ommission's decision finding occasion for the [p]roject as proposed was fraudulent or the result of a gross mistake." "In the absence of such an allegation," the State contends, "any appeal from the findings of the [c]ommission is barred by RSA 230:19." We agree with the Beatties.

The stated purpose of RSA chapter 498-A is "to provide a complete and exclusive procedure to govern all condemnations of property for public uses

4

including the review of necessity, public uses, and net-public benefit, and the assessment of damages therefor." RSA 498-A:1, I (emphases added). Because "[s]tandards of review are procedural in nature," Town of Hinsdale v. Town of Chesterfield, 153 N.H. 70, 74 (2005) (citing Alison H. v. Byard, 163 F.3d 2, 4 (1st Cir. 1998)); see also Merrill v. City of Manchester, 124 N.H. 8, 15 (1983) (explaining that the standard of review is a procedural safeguard necessary to protect landowners' fundamental rights), as a matter of procedure, the standard of review is governed by RSA chapter 498-A, not by RSA chapter 230. RSA 498-A:1, I.

Further, we agree with the Beatties that de novo is the appropriate standard of review under RSA chapter 498-A for the trial court's review of preliminary objections, such as the Beatties', that challenge necessity, public uses, or net-public benefit. In V.S.H. Realty, we held that a landowner is "entitled to a trial de novo before the superior court on the issues of occasion and necessity." V.S.H. Realty, Inc. v. City of Manchester, 123 N.H. 505, 508 (1983). Additionally, in Merrill, we observed that private property ownership rights are fundamental rights under the New Hampshire Constitution, and, therefore, we held that "any party aggrieved by the governing body's findings with respect to blight, necessity, and public purpose is entitled to a de novo trial before the superior court." Merrill, 124 N.H. at 14-15 (explaining that it would violate the equal protection clause of the State Constitution to provide fewer procedural safeguards to landowners whose property is to be taken for municipal redevelopment use, as opposed to highway use).

Although both V.S.H. Realty and Merrill dealt with municipal takings, we can discern no reason why a less rigorous standard of review should apply to takings by the State. We cannot ignore the fact that the legislature provided an exclusive procedure to govern all condemnations. See RSA 498-A:1, I. If we were to apply different standards of review to different eminent domain proceedings based solely on the arbitrary distinction of which governmental entity is involved in the taking, it would not only flout the legislature's intent, but, as in Merrill, it would likely violate the equal protection guarantees of our State Constitution. See Merrill, 124 N.H. at 14-15; State v. Smagula, 117 N.H. 663, 666 (1977) (observing that "[i]t is a basic principle of statutory construction that a legislative enactment will be construed to avoid conflict with constitutional rights wherever reasonably possible"). Given that private property ownership rights are fundamental rights under the New Hampshire Constitution, "we see no compelling governmental interest in providing fewer procedural safeguards to landowners merely because their property is sought for [state highway] use . . . rather than for municipal highway use." Merrill, 124 N.H. at 14-15. Accordingly, we hold that, when a preliminary objection challenging necessity, public uses, or net-public benefit is transferred to the superior court pursuant to RSA 498-A:9-b, the trial court's review is de novo.

We are not persuaded by the State's arguments to the contrary. First, the State argues that State v. Korean Methodist Church of N.H., 157 N.H. 254 (2008), City of Keene v. Armento, 139 N.H. 228 (1994), and State v. Greene, No. 2004-0185, 2004 WL 7318752 (N.H. Dec. 1, 2004), each support the trial court's decision to apply the fraud or gross mistake standard of review that is set forth in RSA chapter 230. We disagree.

As the trial court correctly noted, Korean Methodist is inapposite. In that case, citing preservation grounds, we expressly declined to consider whether the trial court erred when it required the condemnee to prove fraud or gross mistake in order to prevail on its preliminary objection. Korean Methodist, 157 N.H. at 257. Accordingly, because we did not reach the issue that is now before us, Korean Methodist is of no help to the State.

Nor are we persuaded that Armento and Greene support the trial court's decision. In Armento, we were faced with the question of whether RSA chapter 498-A, rather than RSA chapter 423, controlled the eminent domain proceedings involving the taking of land for an airport. Armento, 139 N.H. at 230. The crux of the dispute was whether the condemnees were entitled to have the county commissioners decide the issue of necessity, given that RSA chapter 498-A, unlike RSA chapter 423, did not provide that the authority for such a taking was "conditioned on a determination of necessity by the county commissioners." Id. at 230-32. We concluded that the condemnees were entitled to have necessity determined by the county commissioners, as set forth in RSA chapter 423. Id. at 232. In reaching that conclusion, we observed that "RSA chapter 498-A is a comprehensive eminent domain procedure act, not a comprehensive eminent domain enabling statute," and that the pre-existing enabling statutes "contain[ed] both a grant of power and the procedure to be followed when exercising that power." Id. at 231. Therefore, we reasoned, we "must look to [the enabling] statutes for the proper procedures in situations where RSA chapter 498-A does not exclusively control procedure, particularly where additional procedures are necessary to establish the power to condemn or preserve the condemnee's right to challenge necessity." Id. In other words, in Armento, we held that under the version of RSA chapter 498-A in place at that time, it was appropriate under certain circumstances to look to the enabling statute to determine the applicable procedure. See id.

However, in 1995, the year following our decision in Armento, the legislature amended RSA chapter 498-A by adding the language "including the review of necessity, public purposes, and net-public benefit" to RSA 498-A:1, thereby stating explicitly that "[i]t is the intent by the enactment of this chapter to provide a complete and exclusive procedure to govern all condemnations of property for public purposes including the review of necessity, public purposes, and net-public benefit, and the assessment of damages therefor." Laws 1995, 194:2 (emphasis added). In so doing, the legislature clearly established that

6

RSA chapter 498-A is intended to completely and exclusively govern the procedure for such reviews. See id. Further, the legislature also enacted a new section, RSA 498-A:9-b, which established the procedure by which preliminary objections raising issues of necessity, public use, or net-public benefit are transferred to, and reviewed by, the superior court. See Laws 1995, 194:4. Accordingly, because the procedure for the superior court's review of such preliminary objections is now completely and exclusively governed by RSA chapter 498-A, it is no longer appropriate to look to the enabling statute to determine the applicable procedure, and, therefore, the State's, and the trial court's, reliance on Armento is misplaced.

In Greene, the condemnees filed preliminary objections to the State's taking of their land for a highway project, and we affirmed the trial court's decision to grant the State's motion for summary judgment. Greene, No. 2004-0185, 2004 WL 7318752, at *1. However, in Greene, we relied upon Armento for the proposition that the legislature effectively foreclosed in 1995 when it amended RSA chapter 498-A. Accordingly, Greene provides little support for the State's position or the trial court's decision. In addition, because Greene is an unpublished order, it is non-precedential. See Sup. Ct. R. 12-D(3).

Next, the State argues that our interpretation of RSA chapter 498-A would impermissibly enlarge the rights of a condemnee to challenge necessity or net-public benefit in contravention of RSA 498-A:1. We disagree. As we have observed, a standard of review is a matter of procedural, not substantive, law. See Town of Hinsdale, 153 N.H. at 74. Accordingly, because a standard of review "affects only the process of enforcing litigants' rights and not the rights themselves," and "does not in itself create any substantive right," Freund v. Nycomed Amersham, 347 F.3d 752, 761-62 (9th Cir. 2003) (quotation omitted), we conclude that the application of a de novo standard of review under RSA chapter 498-A does not impermissibly enlarge the Beatties' substantive rights in contravention of RSA 498-A:1.

Additionally, the State argues that our interpretation would impermissibly render the fraud or gross mistake review provisions set forth in RSA 230:14 and :19 virtual nullities. Although the State is correct that, whenever possible, "every word of a statute should be given effect," Garand, 159 N.H. at 141 (quotation omitted), and that "[w]e will not construe a statute in a way that would render it a virtual nullity," Wolfgram v. N.H. Dep't of Safety, 169 N.H. 32, 36 (2016) (quotation omitted), it is equally true that canons of statutory interpretation are "'only an aid to the ascertainment of the true meaning of the statute,'" and are "'neither final nor exclusive.'" 2A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 47.22, at 401-02 (7th rev. ed. 2014) (quoting Helvering v. Stockholms &c. Bank, 293 U.S. 84, 89 (1934)); see also State v. Small, 99 N.H. 349, 351 (1955)

(observing that a canon of statutory interpretation is "not a judicial ukase in the ascertainment of legislative intention"); Lockhart v. United States, 136 S. Ct. 958, 963 (2016) (observing that canons of statutory interpretation are "not an absolute and can assuredly be overcome by other indicia of meaning" (quotation omitted)). Here, we are not persuaded that the cited canons of statutory interpretation compel us to adopt the State's construction. Indeed, as we explained above, the State's construction would not only frustrate the legislature's express intent that RSA chapter 498-A completely and exclusively control "the review of necessity, public uses, and net-public benefit," RSA 498-A:1, but it could also violate the equal protection guarantees of our State Constitution. Further, we are not disposed to adopt the interpretation advanced by the State that would, in effect, give an appointed, three-person commission nearly unreviewable power to deprive landowners of their fundamental property rights. Such an outcome would be unjust if not unconstitutional. See N.H. CONST. pt. I, art. 12; Merrill, 124 N.H. at 14-15; Armento, 139 N.H. at 231-33 (recognizing a condemnee's "right to challenge necessity"); Carrier, 165 N.H. at 721 (observing that, when construing statutes, we avoid producing an "unjust result").

Finally, we note that the State argues that its construction is supported by the legislative histories of the statutes. However, because we have not found ambiguity in the applicable provisions, we have no occasion to look to legislative history as an aid to statutory construction. See Appeal of Pub. Serv. Co. of N.H., 125 N.H. 46, 55-56 (1984) (observing that the lack of ambiguity in a statute "rules out the need to rely on legislative history in its interpretation"). Of course, if the legislature disagrees with our interpretation of RSA chapter 498-A and RSA chapter 230, "it is free, subject to constitutional limitations, to amend the statute[s]." State v. Dor, 165 N.H. 198, 205-06 (2013). Given our decision, we need not address the parties' remaining arguments.

Reversed and remanded.

HANTZ MARCONI and DONOVAN, JJ., concurred.

8